IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONWIDE MUTUAL INSURANCE CO.,   :
  :
       Plaintiff,   :     Case No. 1:09-cv-667
  :
    v.   :
  :
B. DIANE TAMARIZ-WALLACE, et al.,   :
  :
       Defendants.   :

**PLAINTIFF NATIONWIDE MUTUAL INSURANCE COMPANY'S
RESPONSE TO DEFENDANTS' MOTION TO LIFT STAY**

## I.   INTRODUCTION AND SUMMARY

There are a host of reasons as to why the "motion to lift stay" should not be granted.

First, the claims at issue have been adjudicated in the bankruptcy cases initiated by Ms. Tamariz-Wallace ("Tamariz") and her husband, Charles Wallace. The claims that Nationwide had asserted in the instant case were converted into proofs of claim filed in those respective bankruptcy cases and neither the trustees nor the debtors (Tamariz and Wallace) in those cases objected. The Second, Fifth, and Ninth Circuits have all held that where a debtor could have defeated a proof of claim with an objection but did not, the debtor cannot post-bankruptcy assert such objections in the form of claims against the creditor. As such, the claims Tamariz wants to reassert are barred by the doctrine of res judicata.

Second, the Fourth Circuit has expressly held that for similar reasons, if res judicata does not apply, then the doctrine of waiver does apply. When a proof of claim filed in bankruptcy could have been defeated by an objection that was akin to a "counterclaim," but the debtor made no such objection, the debtor cannot assert such "counterclaim" in a later action.

Third, Tamariz's claims are now barred by the statute of limitations. When Tamariz filed her bankruptcy petition in May 2010 and this Court closed the instant case shortly thereafter, a Chapter 7 bankruptcy trustee became the owner of the claims. The Chapter 7 trustee's right to pursue those claims were subject to the bankruptcy statute of limitations set forth in 11 U.S.C. § 108(a). Pursuant to those provisions, the trustee had two years after the commencement of the bankruptcy case to bring an action against Nationwide. Oddly, he twice secured an order from the bankruptcy court approving his retention of lawyers to pursue claims against Nationwide, but then he never pursued them. With the closing of the Tamariz bankruptcy case five years later, any claims the trustee had reverted back to Tamariz, but only in the condition that he left them. He left them subject to the bankruptcy statute of limitations that had long passed so that those claims are now time-barred.

Fourth, this Court never gave Tamariz-Wallace permission to seek leave to reopen this case. The Defendants' motion has a caption that incorrectly flips the parties, so that Tamariz appears to be the Plaintiff. This slight of party appears to be intentional. The Court did not give "Defendant" permission to seek leave to reopen this case, because there was never a stay operating against the Defendant, only the Plaintiff, Nationwide. Defendant's bankruptcy trustee was always free to pursue such claims in the bankruptcy case, but never did.

As to the other Counterclaimant who did not file bankruptcy, Diane Tamariz & Associates., P.A., the Court dismissed that party's claims on March 26, 2010 (Doc. 69), finding that those claims had to be pursued before the Maryland Insurance Commission.

In summary, because all of the claims asserted in this action by Tamariz and Tamariz & Associates were either dismissed or are barred by the doctrines of res judicata, waiver, statute of limitations, or are otherwise not permitted, there is no basis to reopen this case.

## II.    FACTUAL BACKGROUND

Because this case originated over seven years ago and was closed over five years ago, Nationwide will provide some background of what this case was about and what happened after Tamariz filed her bankruptcy petition.

### A.    Nationwide Agent Diane Tamariz Seeks To Grow Her Nationwide Agency By Acquiring The George T. Moran Agency.

Diane Tamariz was a 20-year independent contractor agent for Nationwide Mutual Insurance Company ("Nationwide").[1]  She operated through a corporate insurance agency she owned, Diane Tamariz & Associates, P.A. ("Tamariz & Associates").  Tamariz & Associates had a Corporate Agency Agreement with Nationwide to be an exclusive insurance agent for Nationwide – selling only Nationwide insurance products.[2]  That is, the party that had a contract with Nationwide was Tamariz & Associates, not Tamariz.  Tamariz was the sole owner of Tamariz & Associates, and signed a guaranty of Tamariz & Associates' obligations under the Corporate Agency Agreement.[3]

For several years, Tamariz had wanted to expand her Nationwide insurance agency by acquiring other insurance agencies and merging that business into Tamariz & Associates.[4]  But as a captive, exclusive insurance agent for Nationwide, Tamariz did not own the Nationwide policies she serviced.[5]  Nationwide did.  Without any hard assets to pledge as collateral, Tamariz was unable to obtain a bank loan to acquire another insurance agency.  So Tamariz entered into Nationwide's Independent Agency Acquisition Program ("IAA Program"), a program that allowed Tamariz to borrow capital from Nationwide Bank, an affiliate of Nationwide, in order to finance her acquisition of an insurance agency.

---

[1] See pp. 13-14 of the March 4, 2010 Deposition of Brenda Diane Tamariz-Wallace (the "Tamariz Deposition"), which is being filed with the Court.
[2] Tamariz Deposition Exh. 3.
[3] Tamariz Deposition, pp. 56-60.
[4] Tamariz Deposition, pp. 46-50.
[5] Tamariz Deposition, pp. 101-103.

On her own efforts, Tamariz located a potential agency she wanted to acquire which was owned by George T. Moran.[6]  In October 2004, Tamariz signed a letter of intent with George T. Moran to purchase his agency, George T. Moran, Inc.[7]  As part of this deal, Tamariz retained her own due diligence firm, WFC Capital Advisors, and her own legal counsel, who negotiated and drafted the purchase agreement on her behalf.[8]

In March 2005, Tamariz signed a Stock Purchase Agreement whereby she acquired all of the outstanding shares of George T. Moran, Inc.[9]  She became its sole shareholder.[10]  The deal closed on April 29, 2005.[11]  Under the terms of the deal that Tamariz herself negotiated with George T. Moran, Tamariz paid $3 million for the George T. Moran, Inc. agency – with $2.25 to be paid at closing and the remainder to be paid by two promissory notes in the amounts of $500,000 and $250,000.[12]  Tamariz also received a pre-conversion cash bonus from Nationwide of $361,000 – an amount equal to 7% of the estimate of the amount of direct written premium (DWP) believed that Tamariz would convert to Nationwide ($5,160,201) over the next 24 months.[13]

**B.**     **Tamariz Borrows $2.3 Million From Nationwide Bank To Finance The Acquisition Of The Moran Agency, But Then Soon Defaults.**

Based on her participation in the IAA Program, and with a guarantee of her loan by Nationwide, Nationwide Bank loaned Tamariz and Tamariz & Associates the sum of $2.3 million which Tamariz used to pay part of the $3 million purchase price for George T. Moran, Inc.[14]  This loan was journalized in a Credit Agreement and Promissory Note ("Promissory

---

[6] Tamariz Deposition, pp. 46-51.
[7] Tamariz Deposition, pp. 167-168.
[8] Tamariz Deposition, pp. 84-89, 173, 176-181, 202.
[9] Tamariz Deposition Exh. 31.
[10] Tamariz Deposition, p. 108.
[11] Tamariz Deposition, p. 118-119.
[12] Id.; see also Tamariz Deposition, pp. 245-247.
[13] Tamariz Deposition, pp. 258-259 and Exh. 34.  Thus, while Tamariz complains that the conversion projections were too optimistic, she benefitted from those projections by receiving a higher pre-conversion bonus.
[14] Tamariz Deposition, pp. 245-247.

Note") signed by Tamariz in her personal capacity and in her capacity as an officer of Tamariz & Associates.[15]

The Moran Agency was an independent agency that sold and serviced policies for several carriers.  The Tamariz Agency was an exclusive agency that sold and serviced only Nationwide policies.  Under the IAA (Independent Agency Acquisition) program, Tamariz had a two-year window to try move 90% of the Moran-serviced policies over to Nationwide; that is, to try change non-Nationwide customers into Nationwide customers.[16]  This is why Nationwide guaranteed her loan.  It had no interest in funding the growth of an independent agency (Moran) that sold the policies of multiple competitors.  But ultimately, that is how Tamariz used the Nationwide Bank loan.

At the time of Tamariz's purchase of the Moran Agency, it was servicing $12 million in direct written premiums.[17]  She knew that by moving so much business over to Nationwide, the Moran agency would shrink.[18]  But in the middle of the "conversion period," Tamariz threw things in reverse without telling Nationwide after taking the money from Nationwide Bank.  She eventually grew the Moran Agency to $16 million.[19]  She grew what she was supposed to shrink (the Moran agency) and shrank what she was supposed to grow (Tamariz & Associates).

Tamariz and Tamariz & Associates stopped making payments and went into default on the Promissory Note in late 2007.  This also occurred at about the same time that Nationwide learned that Tamariz had stopped selling Nationwide products[20] and was covertly engaged in an effort to expand the George T. Moran, Inc., agency by moving Nationwide policyholders to

---

[15] Tamariz Deposition Exh. 32.
[16] Tamariz Deposition, pp. 180-181.
[17] Tamariz Deposition Exh. 16, third page.
[18] Tamariz Deposition, p. 183, l. 7-9.
[19] Tamariz Deposition, p. 129.
[20] Tamariz Deposition, p. 142-148.  For instance, Tamariz & Associates initiated no quotations for Nationwide insurance during the entire month of June 2008, and only three such quotations during the entire month of July 2008.  Id.

insurers with whom Tamariz had appointments through the Moran Agency.[21]  Again, she was

supposed to be doing the opposite, trying to move business to Nationwide.

**C.**     **Nationwide Brings Suit Against Tamariz And Her Nationwide Agency, Diane Tamariz & Associates, P.C.**

On November 3, 2008, Nationwide filed suit in the Franklin County (Ohio) Common

Pleas Court against Tamariz, Tamariz & Associates, George T. Moran, Inc., and Moran

Insurance Services, Inc. (another entity Tamariz had formed).  Nationwide's Complaint

asserted claims against Tamariz and Tamariz & Associates for repayment of $2.3 million

Promissory Note and breach of the Corporate Agency Agreement.  Nationwide also asserted

claims for fraud, tortious interference with contract, breach of fiduciary duty, and tortious

interference with prospective business relations related to Tamariz's breach of her duties as a

Nationwide agent.  On December 3, 2008, Defendants removed Nationwide's Complaint to the

United States District Court for the Southern District of Ohio.  And on June 19, 2009, the

Southern District of Ohio transferred the case to this Court upon Tamariz's motion.  (See D.

Md. No. 1:09-cv-1867.)

**D.**     **Nationwide Learns Tamariz and Her Husband, David Wallace, Are Stealing Nationwide's Confidential Trade Secrets.**

While the case was in the process of being transferred to this Court, Nationwide

learned from an employee of Tamariz's husband, David Wallace, that Tamariz had engaged in

the theft of 46 boxes of confidential trade secrets belonging to Nationwide, including

Nationwide policies, policy renewal dates, policyholder lists, and policyholder information

(such as premiums, coverage, and the like).  Tamariz, Wallace, and Tamariz's employees met

in several strategy sessions to determine how to best contact Nationwide policyholders to

---

[21] In June 2008, Nationwide and Tamariz participated in a mediation in Baltimore using the services of a retired federal judge.  Tamariz Deposition, p. 148-149.  While Nationwide had thought the parties had reached an agreement to resolve the dispute and have Tamariz continue with Nationwide, it turned out Tamariz was concealing from Nationwide her business decision to move away from Nationwide toward an independent agency model.

directly solicit them to move away from Nationwide.  Defendants and Wallace, along with an army of employees and agents, transported 46 boxes of Nationwide policyholder files and data to the offices of "Customer Retention Management Group," a company Wallace owned, and there they copied each and every page in all 46 boxes.

Nationwide also learned that Tamariz had transferred her entire interest in the $3 million George T. Moran, Inc. to her husband Wallace for what Tamariz later testified was no consideration.[22]  Nationwide believed this was done for the purpose of evading creditors, including Nationwide.

### E.   Nationwide Second Amended Complaint; Tamariz Counterclaim.

Based on these events, and with this Court's permission, on October 22, 2009, Nationwide filed a Second Amended Complaint naming Wallace as a new party, and asserting new claims for civil conspiracy, violation of the Ohio and Maryland Unfair Trade Practices Acts, and violation of the Ohio and Maryland Fraudulent Conveyance Acts.  (Doc. 49.)

On January 22, 2010, Tamariz and Tamariz & Associates, P.A. filed an Answer and Counterclaim asserting four claims against Nationwide (Doc. 62).  Two claims were dismissed.[23]  The remaining claims were:

- Count One:  Tamariz (in her personal capacity only) asserted a claim of fraud in the inducement, alleging that she never would have taken out the IAA loan, but for what she asserted were misrepresentations and concealments by Nationwide. (Counterclaim ¶¶ 27-34.)

- Count Two:  Tamariz (in her personal capacity only) asserted a breach of the "IAA contractual arrangement," alleging that Nationwide had acted in bad faith by "destroying the value of the [Moran] transaction for Ms. Tamariz." (Counterclaim ¶ 36.)  Importantly, the only "IAA Contractual Arrangement" was the Promissory Note.

---

[22] Tamariz Deposition, pp. 140-141.
[23] On March 26, 2010, this Court issued a memorandum order dismissing Counts Three and Four of Defendants' Counterclaim, holding that the Maryland Insurance Commission had exclusive jurisdiction over such claims.  (Doc. 69.)

Importantly, "fraud" and "prior material breach" were also asserted as affirmative defenses to Nationwide's claims.  (Doc. 62, p. 14.)

**F.**      **Tamariz, Wallace, And The Moran Agency File Bankruptcy - This Case Is Closed.**

While Nationwide was pressing down with subpoenas to get to the bottom of the theft of documents, George T. Moran, Inc., filed a voluntary Chapter 11 bankruptcy on April 15, 2010 (the "Moran Bankruptcy").[24]  Tamariz and Wallace were in sole control of George T. Moran, Inc. by virtue of being its sole directors.[25]  In the following month, Tamariz and Wallace personally filed a Chapter 7 bankruptcy (the "Tamariz Bankruptcy").[26]

In response to these filings, on May 25, 2010, this Court issued an Order "that this action be administratively closed without prejudice to the right ***of plaintiff(s)*** to move to reopen this action for good cause shown."  (Emphasis added.)  Giving the right to Nationwide to reopen the case made sense, because it was Nationwide that was stayed by the bankruptcy filings.  In contrast, the new Chapter 7 Trustee in the Tamariz Bankruptcy was always free to pursue Tamariz's claims against Nationwide.

With this action closed and with the Tamariz Bankruptcy Trustee now owning any claims Tamariz had against Nationwide, it became the obligation of the Trustee to reassert those claims against Nationwide within the newly-applicable statute of limitations period under the Bankruptcy Code.

**G.**      **Nationwide And Tamariz Claims Adjudicated In The Bankruptcy Court.**

**1.**      **Nationwide Claim Adjudicated In The Tamariz Bankruptcy Case.**

a.      No Objection To Nationwide's Proof Of Claim.

On October 6, 2010, Nationwide filed a proof of claim in the Tamariz Bankruptcy in the amount of $2,182,162.45 related to the claims it asserted in this lawsuit.  Attached in support

---

[24] D. Md. Bankr. No. 10-18337.
[25] D. Md. Bankr. No. 10-18337, Doc. 7, p. 2.  Also attached as Exhibit A.
[26] D. Md. Bankr. No. 10-21874.

of the proof of claim was the Verified Amended Complaint which had been filed in the instant action.[27]  The Bankruptcy Trustee did not object to Nationwide's claim.  More specifically, the Trustee did not seek a determination from the Bankruptcy Court that the loan was invalid because Nationwide had breached the "IAA contractual arrangement," as alleged in Tamariz's counterclaim.  He did not assert that the loan was induced by fraud, as alleged by Tamariz.

Even more importantly, Defendant Tamariz, as a "party-in-interest" who was a debtor in her own bankruptcy filed no objection to Nationwide's claim.  Neither did her husband, the other debtor.

b.    <u>No Pursuit Of Claims Against Nationwide.</u>

As part of her bankruptcy, Tamariz listed on Schedule B her claims against Nationwide, and placed a value on those claims of $10 million.[28]  On May 25, 2012 – one day shy of the two-year anniversary of the filing of the Tamariz Bankruptcy – the Chapter 7 Trustee moved the Bankruptcy Court to appoint William Tedards and the law firm of Yumkas, Vidmar & Sweeney as Special Litigation Counsel for the purpose of prosecuting Tamariz's claims against Nationwide.[29]  The Court granted the motion.[30]

Six months later, the Trustee filed a copy of the *Contingent Fee and Special Litigation Counsel Representation Agreement*.  Section 2 of that Agreement provided that "Tedards and [Yumkas, Vidmar & Sweeney] agree to serve as special litigation counsel to the Trustee in the Litigation, ***and will immediately take such actions as are necessary and appropriate to preserve any claims asserted against Nationwide and/or Nationwide Bank***."

(Emphasis added.)

---

[27] See attached Exhibit B.
[28] See attached Exhibit C, which comprised of selected pages of the Summary of Schedules filed in the Tamariz Bankruptcy Case.
[29] D. Md. Bankr. No. 10-21874, Doc. 125.
[30] Notably, the proposed *Contingent Fee and Special Litigation Counsel Representation Agreement* between the Trustee and the proposed counsel was not executed.  <u>Id.</u> Doc. 125-3.

But counsel did not take immediate action.  Counsel did not take any action.  More than two years passed and nothing happened.

Fast forward another 30 months to October 28, 2014.  Now more than four years after the Tamariz Bankruptcy was commenced and long after the passing of the statute of limitations deadline discussed below, the Trustee moved to appoint a different attorney, Caryn Groedel, as Special Litigation Counsel for the purpose of prosecuting Tamariz's claims against Nationwide.  Groedel signed a similar *Contingent Fee and Special Litigation Counsel Representation Agreement*, which also represented that "Special Litigation Counsel... ***will take such actions as are necessary and appropriate to preserve and prosecute the claims asserted against Nationwide, and possibly Nationwide Bank.***"[31]  The Court approved that motion.[32]  Again, nothing happened.

### c.      Tamariz Bankruptcy Closed.

Almost a year later, on August 21, 2015, the Tamariz Bankruptcy was closed with no objection made to Nationwide's claim and no action filed against Nationwide.  On January 4, 2016, Tamariz filed her Motion to Lift Stay.

## 2.      Nationwide Claim Adjudicated In The Moran Bankruptcy Case.

### a.      No Objection To Nationwide Proof of Claim; Claim Paid.

Likewise, in the Moran Bankruptcy, Nationwide filed a proof of claim, asserting that it was owed an "unliquidated" amount of "not less than $2,000,000."[33]  As in the Tamariz Bankruptcy, Nationwide attached to its proof of claim in the Moran Bankruptcy a copy of the same Verified Amended Complaint filed in this action.

The Moran Bankruptcy initially began as a Chapter 11 proceeding, but was subsequently converted to a Chapter 7 proceeding.  During the Chapter 11 phase when

---

[31] D. Md. Bankr. No. 10-21874, Doc. 137-1.
[32] Id. at Doc. 138.
[33] See attached Exhibit D.

Tamariz and Wallace were in control of the debtor-in-possession, the debtor-in-possession did not object to Nationwide's proof of claim.  And after a trustee was installed upon conversion to Chapter 7, the bankruptcy trustee likewise did not challenge the claim.

        b.        <u>Nationwide Claim Allowed And Distribution Made</u>.

Not only was Nationwide's claim accepted, it was allowed in the entire amount of $2 million and Nationwide received a distribution.  In fact, it received the largest distribution of any unsecured creditor in the amount of $60,875.[34]

        c.        <u>Result From Both Bankruptcies</u>.

In both bankruptcy cases neither of the trustees and none of the debtors themselves filed any objection to Nationwide's claims which were expressly laid out in the very same Verified Amended Complaint that had been filed in this action and which included both tort claims and Nationwide's claim for monies due under the loan.  The trustees or the debtors could have challenged those claims in either bankruptcy case by raising the claims Tamariz seeks to reopen in this case – fraud in the inducement and breach of contract.  Tamariz in particular had a financial interest in challenging the claims in order to preserve them or to even secure a surplus distribution, as will be discussed more fully below.

But no challenge was made and both bankruptcy cases were administered and closed.

## III.   ARGUMENT

### A.   <u>Res Judicata Now Applies To Claims Against Nationwide.</u>

The allowance or disallowance of a "claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata." <u>Siegel v. Federal Home Loan Mortgage Corporation</u>, 143 F.3d 525, 529 (9th Cir. 1998), quoting <u>States v. Coast Wineries, Inc.</u>, 131 F.2d 643, 648 (9th Cir. 1942).  <u>See also</u> <u>Bank of Lafayette v. Baudoin (In re Baudoin)</u>, 981 F.2d 736, 742 (5th Cir. 1993) (The

---

[34] See attached Exhibit E.

allowance of a proof of claim is a final judgment to be given res judicata effect.); <u>EDP Med.</u>

<u>Computer Sys. v. United States</u>, 480 F.3d 621 (2nd Cir. 2007) ("We now join these two circuits

[the Ninth and Fifth] in holding that a bankruptcy court order allowing an uncontested proof

of claim constitutes a "final judgment" and is thus a predicate for res judicata.")

     <u>Siegel</u> involved facts very similar to the instant case.  Siegel filed for bankruptcy

because he had defaulted on loans owned by Freddie Mac.  While the bankruptcy case was still

active, Siegel and his partner filed an action against Freddie Mac in state court.  The

borrowers asserted that Freddie Mac had engaged in activity which facilitated their defaults

and subsequent bankruptcy.

     Separately, Freddie Mac filed two proofs of claim in the bankruptcy case.  Neither the

debtor nor the bankruptcy trustee objected to the proofs of the claim.  The debtor was

discharged from bankruptcy and the matter was closed.  <u>Siegel,</u> 143 F.3d at 527-528.  As a

result, the Ninth Circuit ruled that the debtor could not maintain his action against Freddie

Mac because it was barred by the doctrine of res judicata.  <u>Id.</u> at 529.

     In the course of its analysis, the court observed that, like in the instant case, the claims

of the lender and the claims of the borrower were deeply intertwined:

> "Freddie Mac filed two proofs of claim… in Siegel's bankruptcy proceeding.  No
> objection was filed to the claims in the bankruptcy action.  Siegel's present suit
> against Freddie Mac in contract and tort states a variety of causes of action all
> of which are premised on Freddie Mac's failure to finance repair projects on the
> Windbell and Dalton Place Properties, and its failure to approve the sale and
> transfer of the Dalton Place Property.  The gravamen is that Freddie Mac
> violated its duties under the notes and deeds of trust and, among other things,
> should not have been able to proceed against Siegel [the debtor] due to its own
> defaults and wrongdoing."  <u>Id.</u> at 529.

Indeed, those facts are very similar to this case.  Tamariz asserts claims in tort and contract,

that she was fraudulently induced into the IAA loan program and that Nationwide materially

breached the governing loan agreement.[35]  The court in <u>Siegel</u> went on to observe:

---

[35] <u>See</u> Counterclaim Counts I and II and Affirmative Defenses 7 and 8 (Doc. 62).

> "Clearly, Freddie Mac's right to recover on its proofs of claim in the bankruptcy court could have been attacked on that basis. Just as clearly, its rights established in the bankruptcy would be affected by resolution of the present action. Similarly, the present suit and the proofs of claim stem from the same nucleus of facts, and involve similar evidence, i.e., the loan documentation and the surrounding circumstances. Again, the interest at stake in both actions involve Freddie Mac's right to recovery under the loan agreements. As such, the district court correctly concluded that res judicata bars Siegel's claims in the present action." Id.

Again, those are exactly the facts of this case. Tamariz's allegations in her counterclaim are the opposite side of the same factual coin of allegations that had been asserted by Nationwide in its amended complaint and which formed the basis for the proofs of claim filed in both the Tamariz and Moran Bankruptcy cases.

The Siegel court noted that 11 U.S.C. § 502(a) provides that a proof of claim "is deemed allowed, unless a party-in-interest… objects." Siegel, 143 F.3d at 520 (quoting 11 U.S.C. § 502(a)). With this in mind, the court noted that not only could the trustee have objected to the proof of claim, "Siegel could have objected as well." Siegel, 143 F.3d at 531, citing Lawrence v. Steinford Holding B.V. (In re Dominelli), 820 F.2d 313, 316 (9th Cir. 1987), IRS v. Taylor (In re Taylor), 132 F.3d 256, 261 (5th Cir. 1998) ("Once a proof of claim is filed, the debt is considered allowed unless the debtor or another party-in-interest files an objection to the proof of claim."); FDIC v. Union Entities (In re Be-Mac Transp.), 83 F.3d 1020, 1025 (8th Cir. 1996) ("In order to disallow the claim, the debtor or another party-in-interest must object and request a determination of the lien's validity."); and 4 COLLIER ON BANKRUPTCY Par. 502.02[2][a]-[c] (1997) (The trustee may object but the debtor may also have standing).

And just like in the instant case, the debtor in Siegel "had good reason to exert himself, if he wished to." The court noted that:

> "The nature of his assertions and demands indicates that he could have benefitted, and could even have come out solidly solvent had he prevailed. In fact, he asserts that it was Freddie Mac that forced him into bankruptcy. Thus, its claims and his asserted defenses and counterclaims were the heart and soul of the bankruptcy." Siegel, at 531.

This is also exactly the case with Tamariz in both her bankruptcy case and her company's (Moran's) bankruptcy case.  If she and/or her husband had successfully challenged Nationwide's proofs of claim with the same counterclaims that had been asserted in this action, they "could have benefitted, and could even have come out solidly solvent had [they] prevailed."  Id.

For example, in the schedules filed by the debtors in the Tamariz Bankruptcy case, Tamariz and her husband asserted that they had assets of almost $13.3 million and liabilities of over $27.6 million.[36]  But the liabilities were wildly inflated by Tamariz and Wallace asserting that Nationwide's claim *against them* had a value of over $21.8 million.[37]  And on the asset side, they valued their claim against Nationwide as being worth $10 million.[38]

If they or the trustee had (1) objected to Nationwide's claim, (2) restarted the prosecution of their claims against Nationwide, and (3) won in the amount anticipated, they would have enjoyed a surplus to distribute to themselves.[39]

This is important.  By being able to take steps against Nationwide in the bankruptcy case which could have resulted in a surplus to be returned to Ms. Tamariz, Tamariz had standing to file an objection in the Tamariz Bankruptcy.  See In re Curry, 409 B.R. 831, 838 (Bankr. N.D. Tex. 2009).  See also In re Morgan, No. 05-34981-SGJ-7, 2007 WL 2669341, at * 4 (Bankr. N.D. Tex. Sept. 6, 2007) (After considering the claims register, the trustee's report of assets, and the fact that the trustee hired accountants to investigate the assets of the debtor, the court concluded that given the uncertainty of the total assets and claims, the debtor had a pecuniary interest in the outcome of the claim objection.)

Just as Siegel had "good reason to assert himself," so did Tamariz.  But she never did.

---

[36] See attached Exhibit C.
[37] Id.
[38] Id.
[39] Nationwide's "$21.8 million" claim would have been wiped off the liability side and there would have been an approximate surplus of $7 million for Tamariz and Wallace.

**B.**     **Tamariz Waived Her Claims Against Nationwide By Not Objecting To Nationwide's Proof Of Claim.**

In <u>Siegel</u>, the Ninth Circuit acknowledged that the Fourth Circuit had issued a decision expressing doubt as to whether the "automatic allowance" of an uncontested proof of claim can constitute a final judgment "of the type that gives rise to 'bar' or 'claim preclusion' under strict res judicata principles." <u>Siegel</u>, at 530, citing <u>County Fuel Company v. Equitable Bank Corporation</u>, 832 F.2d 290, 292 (4th Cir. 1987).

At the time of the <u>County Fuel</u> decision, the Fourth Circuit observed the legal landscape and found that a "majority view is that the failure to interpose such an available 'counterclaim' [in the form of an objection to a proof of claim] does not, as a matter of res judicata, bar its subsequent assertion as an independent claim for relief." <u>Id.</u> But since that decision was rendered, all of the federal circuits which have directly ruled on this issue have found that an uncontested proof of claim can bar a subsequent action on the grounds of res judicata. <u>See</u>, <u>Siegel</u> (9th Circuit), <u>Baudoin</u> (5th Circuit), and <u>EDP</u> (2nd Circuit). The decided majority has clearly shifted since <u>County Fuel</u> was issued in 1987.

But perhaps a more important reason why <u>County Fuel</u> should not guide the res judicata issue is the fact that the court in that case was dealing with a bankruptcy case which had not closed, so that there was truly no final judgment. The Fourth Circuit noted that objections could still have been made after the automatic allowance of a claim, the claim could have been disallowed upon reconsideration, and that the automatic allowance was not "final" for purposes of appellate review. <u>County Fuel</u>, at 292. But as the court in <u>Siegel</u> noted, none of those considerations apply where "the debtor has received his discharge and the bankruptcy case has closed." It predicted that "any lingering doubts [by the Fourth Circuit] about finality would surely have been assuaged." <u>Siegel</u>, at 530. Such are the facts of the instant case.

But <u>County Fuel</u> does apply for a different reason. While the Fourth Circuit chose not to apply the doctrine of res judicata in <u>County Fuel</u>, it went on to determine that a debtor that

had failed to object to a proof of claim was nonetheless barred from litigating any aspect of that claim "by the principles of waiver."

County Fuel dealt with similar facts as are present in the instant case and as were present in Siegel. A creditor had filed a proof of claim, the debtor could have challenged that proof of claim by "raising as a defense the same claim upon which it" later asserted an action against the creditor, but never objected. Id., at 292. And very much like the instant case, the Fourth Circuit observed that the debtor's objection to the creditor's proof of claim would have been akin to a "counterclaim" just as Tamariz's pre-bankruptcy claims against Nationwide were actually in the form of a counterclaim.

With this in mind, the Fourth Circuit held that the debtor's failure to object to the creditor's proof of claim precluded the debtor from later filing independent actions. County Fuel, at 293. And so it is in this case. Tamariz waived her claims against Nationwide when she failed to assert them in the form of an objection to Nationwide's proof of claim filed in her bankruptcy case. And as "privies" of their own company, Wallace and Tamariz similarly failed to make such objections in the Moran Bankruptcy case. As such, even if the doctrine of res judicata did not apply, the doctrine of waiver clearly does.

### C.  The Bankruptcy Trustee Did Not Timely Assert The Claims Tamariz Now Tries To Assert, Which Are Time-Barred.

Tamariz's claims against Nationwide became the property of the Chapter 7 estate, as it was listed as an asset on the schedules mentioned supra. But the Chapter 7 Trustee never pursued those claims and they are now time barred. That is, when the Court closed the instant case in May 2010, it became the obligation of the bankruptcy trustee to pursue claims against Nationwide within the Bankruptcy Code deadlines. He never did.

1.      **The Bankruptcy Trustee Owned The Tamariz Claims For Five Years.**

As noted above, the only two claims asserted by Tamariz that remained in this case at the time of the filing of the Tamariz Bankruptcy were claims for fraudulent inducement and breach of contract.  When Tamariz filed her bankruptcy petition, her claims against Nationwide became property of her bankruptcy estate.

The Bankruptcy Code provides that "all legal or equitable interests of the debtor in property" become property of the bankruptcy estate at the commencement of the bankruptcy case.  11 U.S.C. § 541(a).  "Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished," and the appointed bankruptcy trustee becomes "the representative of the bankruptcy estate."  <u>Kane v. Nat'l Union Fire Ins. Co.</u>, 535 F.3d 380, 385 (5th Cir. 2008) (per curiam).

Property of the estate includes *all* of the debtor's interests in any cause of action that has accrued prior to the bankruptcy petition.  <u>Tignor v. Parkinson (In re Parkinson)</u>, 729 F.2d 977, 980-81 (4th Cir. 1984).  "These legal and equitable interests include causes of action." <u>Official Comm. Of Unsecured Creditors v. R.F. Lafferty & Co., Inc.</u>, 267 F.3d 340, 358 (3d Cir. 2001) (citing 3 COLLIER ON BANKRUPTCY ¶ 323.02[1]).  A cause of action becomes property of the debtor's bankruptcy estate, regardless of whether the action was formally filed prior to the commencement of the bankruptcy.  <u>Lawrence v. Jackson Mack Sales, Inc.</u>, 837 F. Supp. 771, 779 (S.D. Miss. 1992), aff'd sub nom. 42 F.3d 642 (5th Cir. 1994) (collecting cases).

The Chapter 7 trustee became the only party in interest with standing to prosecute Tamariz's claims.  <u>Richman v. First Woman's Bank (In re Richman)</u>, 104 F.3d 654, 657 (4th Cir. 1997).

2.      **11 U.S.C. § 108(a) Bars All Of Tamariz's Claims.**

Tamariz's Motion to "Lift Stay" should be denied because she is attempting to revive claims that were long ago barred by the statute of limitations.  With the instant case closed on

May 25, 2010, it was squarely the obligation of the bankruptcy trustee to re-commence prosecution of Tamariz's claim before the newly-applicable statute of limitations expired.

Section 108(a) of the Bankruptcy Code provides:

> If applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of--
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.[40]

11 U.S.C. 108(a); see also Phillips v. KIRO-TV, Inc., 817 F. Supp. 2d 1317, 1327 (W.D. Wash, 2011) ("The section which does apply is 11 U.S.C. § 108(a), which extends the applicable statute of limitations from the date the bankruptcy petition was filed."); Estate of Miller Carr v. United States, 482 F. Supp. 2d 842, 850 (W.D. Tex. 2007) ("In other words, section 108(a) generally allows a Trustee or debtor-in-possession to commence an action in a non-bankruptcy proceeding within the later of the limitations period allowed for such proceeding or two years after the order for relief.").

"The purpose of § 108 is to allow the trustee additional time to discover and evaluate potential causes of action after stepping into the shoes of the debtor." Johnson v. Homecomings Fin., LLC (In re Johnson), No. 08-4068, 2009 Bankr LEXIS 2260, *8 (Bankr. S.D. Ill 2009).

Under Maryland law, the statute of limitations for all civil actions – including fraud and breach of contract claims – is three years. See Md. Cts. & Jud. Proc. Code § 5-101; United States v. Allen-Williams, 2011 U.S. Dist. LEXIS 120744, 2011 WL 4985817, at *4 (D. Md. Oct. 19, 2011) ("Under Maryland law, the statute of limitations for contract and fraud claims is three years unless otherwise specified.")

---

[40] An "order for relief" refers to the debtor's bankruptcy petition. See 11 U.S.C. § 301 ("The commencement of a voluntary [bankruptcy] case . . . constitutes an order for relief... .").

In Count One of her Counterclaim, Tamariz alleges that Nationwide concealed from her that it was aware that the 2004 "Lightfoot Report" – showing Tamariz would likely convert 66% of the Moran Agency policies to Nationwide policies – was false. Tamariz alleges that between 2005 and 2007, Tamariz presented over $21 million of premium to Nationwide for conversion, but that Nationwide only agreed to write $2.9 million of that business. (Counterclaim ¶¶ 18-23.) Tamariz alleges that rate increases, poor customer service, and poor account management put her in an "impossible position." Nationwide canceled her Corporate Agency Agreement on November 2008. (Counterclaim ¶¶ 25-26.)

Based on these allegations, Tamariz's fraud claim accrued, ***at the latest***,[41] in November 2008 when Nationwide canceled the Corporate Agency Agreement and Tamariz ceased being a Nationwide agent. Under Maryland law, the statute of limitations for that claim normally would have expired in November 2011.

Under 11 U.S.C. 108(a), however, once Tamariz filed bankruptcy in May 2010, the applicable statute of limitation on Tamariz's fraud claim was extended to May 2012. This is because the Trustee had "the longer of the time period under the state statute of limitations [which expired in November 2011] or two years after the order for relief [was] entered [which expired in May 2012] in which to commence such an action."[42]

Tamariz's Bankruptcy Case continued on for over five years. During that time, the Trustee did not pursue Tamariz's fraud or breach claims against Nationwide despite ample opportunity to do so. The Trustee certainly knew the estate had the ability to bring a claim against Nationwide. The claim was listed on Schedule B of Tamariz's Schedule of Assets.

---

[41] This is not to be construed as a waiver by Nationwide of the argument that Tamariz discovered or could have discovered the supposed false statements or concealment earlier than November 2008, causing the statute of limitations to begin running sometime between 2004-2007. Under such a scenario, it is quite likely that the applicable three-year statute of limitations expired well before Tamariz even filed her bankruptcy petition.

[42] Thirteen months of the three-year statute of limitations accrued between November 2008 when it began to run and January 2010 when she asserted her counterclaims against Nationwide.

Perhaps recognizing the statute of limitations was closing on him, the Trustee filed a motion on May 25, 2012 to appoint William Tedards and the law firm of Yumkas, Vidmar & Sweeney as Special Litigation Counsel to pursue the fraud claim against Nationwide. The Bankruptcy Court granted the Trustee's motion. The Trustee's counsel were required to "***immediately take such actions as are necessary and appropriate to preserve any claims asserted against Nationwide and/or Nationwide Bank***." But nothing happened.

Several years passed. The Bankruptcy Court vacated its Order appointing Tedards and the Trustee moved the Bankruptcy Court to appoint a different counsel, Caryn Groedel. Groedel's Agreement with the Trustee entered into in also stated she would "***<u>take such actions as are necessary and appropriate to preserve and prosecute the claims asserted against Nationwide, and possibly Nationwide Bank.</u>***" (Bankruptcy Doc. 137-1.) But she never brought a proceeding against Nationwide either.

Again, under Section 541 of the Bankruptcy Code, the Trustee owned the claim against Nationwide. And under Section 108(a) of the Bankruptcy Code, the Trustee was required to assert that claim no later than May 26, 2012 – two years after the filing of the bankruptcy action. The bankruptcy action was dismissed 3½ years later, with no adversary proceeding, settlement, or discussion with Nationwide. The fraud claim that Tamariz seeks to revive was long ago time barred, and thus there is no basis to reopen this case.

### 3. The "Automatic Stay" Does Not Save Tamariz's Counterclaims; It Only Stays Claims *Against* Tamariz.

Tamariz may argue that the "automatic stay" under Section 362 of the Bankruptcy Code tolled her obligation to file suit. But that cannot be the case. If it were, then Section 108 of the Bankruptcy Code – placing a statute of limitations on the claims of a trustee or debtor-in-possession – would have no purpose.

Indeed, while 11 U.S.C. § 362(a) certainly provides for an automatic stay as to claims proceeding in the district court, it "only" applies "with respect to claims *against a debtor*."

Linares v. CitiMortgage, Inc., No. C-14-3435 EMC, 2015 U.S. Dist. LEXIS 58919, at *10 (N.D. Cal. May 5, 2015).  In other words, Section 362(a) only applies to claims *against* a debtor, and not to claims that the debtor *brought or could bring*.  See e.g., In re White, 186 B.R. 700, 704 (B.A.P. 9th Cir. 1995) ("[T]he time limitation on a debtor's action is not tolled by the filing of a bankruptcy petition."); Wickenkamp v. Baum, No. 2:15-CV-483-PK, 2015 U.S. Dist. LEXIS 128320, at *28 (D. Or. July 24, 2015) ("More critically, as a matter of law Section 362(a) does not toll the limitations period applicable to claims of the debtor, . . ."); Linares, 2015 U.S. Dist. LEXIS 58919, at *10 ("Here, Plaintiffs are the debtors who have a claim to assert; they were not barred by § 362 from taking legal action to protect their rights.")

Moreover, "counterclaims brought by defendants" – that is, counterclaims already asserted – "are not automatically stayed" by 362(a).  See CLG, Inc. v. Emergency Envtl. Servs., No. 5:95-CV-722-BR(1), 1996 U.S. Dist. LEXIS 20007, at *2 (E.D.N.C. Dec. 17, 1996); see also In re Regal Constr. Co., 28 B.R. 413, 416 (Bankr. D. Md. 1983) ("The automatic stay of 11 U.S.C. § 362 did not preclude Regal from proceeding on its counterclaim in the District of Columbia" because Section 362 by its terms stays proceedings against the debtor" and not "actions brought by the debtor")(emphasis in original);  Advanced Computer Servs. v. Mai Sys. Corp., 161 B.R. 771, 775 (E.D. Va. 1993) ("Although the claims in the complaint are subject to the § 362(a) automatic stay, the same result does not obtain with respect to the counterclaim. It is brought by the debtor, not against the debtor. By its plain terms, § 362(a) has no application to a debtor's claim."); Pinpoint IT Servs., LLC v. Atlas IT Exp., LLC (In re Atlas IT Exp., LLC), 491 B.R. 192, 195 (B.A.P. 1st Cir. 2013) ("It is well-established that [t]he statute does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate. Indeed, [t]he debtor may file suit in any forum without leave of the Bankruptcy Court, for the automatic stay is to protect the debtor from creditors not vice versa." (citation omitted) (internal quotation marks omitted)).

The only claims stayed were Nationwide's claims against Tamariz; Tamariz's counterclaims were not stayed.  Again, that is why this Court's May 25, 2010 Order which provided that **_Nationwide_** could move to reopen this action for good cause shown made sense. Nationwide was stayed, not Tamariz.  The Court had no reason to make a similar pronouncement as to Tamariz's claims because the automatic stay in § 362(a) did not stay her counterclaims.

Because Tamariz's claims are barred by the applicable statutes of limitations, the Court should deny Tamariz's motion.

### D.   The Court's May 25, 2010 Order Closing This Case Did Not Allow For Tamariz To Move To Reopen The Case.

It appears intentional that Tamariz's "Motion to Lift Stay" uses a caption that incorrectly identifies Tamariz as the Plaintiff and Nationwide as the Defendant.[43]  This is because this Court's May 25, 2010 Order stated:  "Defendant(s) having filed bankruptcy proceeding in which an automatic stay has been issued, it is... ORDERED that this action be administratively closed without prejudice **_to the right of plaintiff(s) to move to reopen this action for good cause shown_**."  (Emphasis added.)

The "Plaintiff" is Nationwide, not Tamariz.  On October 22, 2009, after a lengthy discussion and negotiation among counsel, the parties entered into a Joint Stipulation, approved by this Court, realigning the parties and making Nationwide the Plaintiff and Tamariz the Defendant.  (Doc. 48.)  This Court's subsequent Order closing this case allowed for **_Nationwide_** to petition to reopen this case; not Tamariz.

---

[43] For that matter, the caption of the motion as one to "Lift Stay" is similarly problematic because there is no stay to lift in regard to Tamariz's claims.  Tamariz, her husband, David Wallace, and her insurance agency, George T. Moran, Inc., all filed bankruptcy petitions almost six years ago in May 2010.  Nationwide's claims against those parties were automatically stayed as required by the Section 362(a) of the Bankruptcy Code.  But Tamariz's two claims against Nationwide were not stayed because the automatic stay only applied to claims asserted *against* the debtor; not claims asserted *by* the debtor.

Again, this made sense because Nationwide was barred from pursuing its claim as a result of the bankruptcy filing, not Tamariz or then the bankruptcy trustee.  The trustee, on the other hand, was free to sue Nationwide at any time while the bankruptcy was pending.  That is presumably why the Court did not grant the Defendant the right to try to reopen the case.  The Defendant – the trustee – always had the right to pursue the claims against Nationwide.  As such, Defendant's motion is facially invalid.

## IV.    CONCLUSION

Wherefore, for the forgoing reasons, Nationwide respectfully requests the Court deny Defendants' motion and issue an order confirming.

Respectfully submitted,

*/s/ Patricia McHugh Lambert*
Patricia McHugh Lambert (02539)
PESSIN & KATZ, P.A.
901 Dulaney Valley Road, Suite 400
Towson, Maryland  21204
(410) 339-6759
(410) 832-5628 (facsimile)
plambert@pklegal.com

Quintin F. Lindsmith (Ohio 0018327)
James P. Schuck (Ohio 0072356)
Sommer L. Sheely (Ohio 0076071)
(*Admitted Pro Hac Vice*)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio  43215-4291
(614) 227-2300
(614) 227-2390 (facsimile)
qlindsmith@bricker.com
jschuck@bricker.com
ssheely@bricker.com

*Counsel for Plaintiff*
*Nationwide Mutual Insurance Company*

## CERTIFICATE OF SERVICE

The foregoing document was filed and served this 21st day of January, 2016, upon counsel of record via the Court's electronic filing and notification system.  Copies of this document and all attachments and exhibits may be accessed through the Court's electronic filing system.

*/s/ Patricia McHugh Lambert*
Patricia McHugh Lambert