B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT | District of Maryland | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor:**
Charles David Wallace and Brenda Diane Tamariz Wallace

**Case Number:**
10-21874-RAG

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor (the person or other entity to whom the debtor owes money or property):**
Nationwide Mutual Insurance Company

☐ Check this box to indicate that this claim amends a previously filed claim.

**Name and address where notices should be sent:**
Robin D. Korte, Esq. and Mark F. Scurti, Esq., HODES, PESSIN & KATZ, P.A.,
901 Dulaney Valley Road, Suite 400, Towson, Maryland 21204

**Court Claim Number:** _____
*(If known)*

**Telephone number:**
(410) 938-8800

Filed on: _____

**Name and address where payment should be sent (if different from above):**
Quintin F. Lindsmith, Esq.
BRICKER & ECKLER, LLP, 100 S. Third Street, Columbus, Ohio 43215

**Telephone number:**
(614) 227-2300

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ Unliquidated in an amount not less than $2,182,162.45.

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Claims in tort
(See instruction #2 on reverse side.)    (See Exhibit A)

**3. Last four digits of any number by which creditor identifies debtor:** 1855

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**

**Value of Property:** $_____  **Annual Interest Rate** _____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $_____  **Basis for perfection:** _____

**Amount of Secured Claim:** $_____  **Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**Date:**
10/6/10

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**EXHIBIT**

**B**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| In re: | * | |
| | | |
| **CHARLES DAVID WALLACE,** | * | **Case No.: 10-21874-RAG** |
| | | |
| **BRENDA DIANE TAMARIZ WALLACE,** | * | |
| | | |
| Debtors. | * | (Chapter 7) |

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

<u>**EXHIBIT A TO PROOF OF UNLIQUIDATED CLAIM OF CREDITOR
NATIONWIDE MUTUAL INSURANCE COMPANY**</u>

The basis for creditor Nationwide Mutual Insurance Company's ("Nationwide") unliquidated claim is set forth specifically in Nationwide's Verified Amended Complaint against debtor B. Diane Tamariz-Wallace ("Tamariz") and related defendants in pending litigation in the U.S. District Court for the Southern District of Ohio, Eastern Division ("Ohio District Court"), styled *Nationwide Mutual Insurance Co. v. B. Diane Tamariz-Wallace, et al.*, Case No. C-2-08-1148 (a copy of the Amended Complaint is attached hereto and provides the specific facts in support of this Unliquidated Claim) (the "Complaint").

In summary, Nationwide is a large, national insurer. Tamariz was an insurance agent for Nationwide for almost twenty (20) years. During most of those 20 years, Tamariz was an independent contractor agent who owned and operated her own insurance agency, Tamariz & Associates.[1] Tamariz is the sole shareholder of Tamariz & Associates.

In May 2005, Tamariz purchased George T. Moran, Inc. to expand her insurance business. Since 2005, Tamariz has operated George T. Moran, Inc. under the name Moran Insurance Services. Tamariz paid $3 million for George T. Moran, Inc., substantially all of

---

[1] The facts set forth herein are verified in Plaintiff's Amended Verified Complaint.

which was funded by a loan from Nationwide's affiliate, Nationwide Bank. The expectation of the parties was that Nationwide Bank would finance Tamariz's purchase of George T. Moran, Inc. in order to allow Tamariz to expand her insurance business and provide her an additional outlet to sell Nationwide insurance products.

Tamariz subsequently defaulted on the acquisition loan. Nationwide Bank thereafter assigned the loan to Nationwide. Nationwide is now the owner and holder of the loan with the full rights to enforce the terms of the loan.

During the parties' business relationship, Tamariz & Associates entered into a Corporate Agency Agreement with Nationwide, which provided that Tamariz & Associates was to represent Nationwide exclusively in the sale and servicing of insurance. Under the Corporate Agency Agreement, Tamariz & Associates was prohibited from selling insurance for other carriers. Tamariz guaranteed the performance of Tamariz & Associates under the Corporate Agency Agreement.

Likewise, Moran Insurance Services entered into a Corporate Associate Agent Agreement with Nationwide, which provided that Moran Insurance Services would act as an associate insurance agency under the appointment of Tamariz & Associates. The terms of the Corporate Associate Agent Agreement expressly made the terms of the Corporate Agency Agreement applicable to Moran Insurance Services. The purpose of the Associate Agent Agreement was to allow Moran Insurance Services to act as an associate agent of Tamariz & Associates for the purpose of writing Nationwide business.

In or around the fall of 2008, Nationwide learned that Defendants were actively violating the terms of the Corporate Agency Agreement and Corporate Associate Agent Agreement by selling, attempting to sell, and soliciting insurance business for carriers other than Nationwide.

2

Tamariz, while still an agent of Nationwide, was directing policyholders and prospective customers away from Nationwide and to insurance companies written by George T. Moran, Inc. That is, as the owner and a director of George T. Moran, Inc., Tamariz was using confidential and proprietary policyholder information that belonged to Nationwide to attract customers away from Nationwide to other insurance carriers serviced by George T. Moran, Inc. Such conduct was not only in violation of the trade secret laws, but was also in tortious interference by this Debtor in the contractual relationships between Nationwide and its policyholders. As a result of these activities, Nationwide cancelled the Corporate Agency Agreement and Corporate Associate Agent Agreement on November 3, 2008.

Pursuant to the Complaint, Nationwide is entitled to a claim estimated at no less than **$2,182,162.45**, including but not limited to, compensatory and punitive damages, attorney fees, default pre and post petition interest accruing at a rate equal to the prime rate plus five percent per annum, and other related costs. It is notable; however, that Tamariz has indicated in her Schedule F that Nationwide's claim is contingent, unliquidated and disputed in the amount of $21,821,620.00 (p. 8 of 12). When questioned about this amount during the meeting of creditors, Tamariz responded that this was a correct amount based on the total amount claimed by Nationwide added together, thus Nationwide has presumed that its claim, as scheduled by Tamariz, is based on an acknowledgment by Tamariz that Nationwide could seek additional damages in amount not less than $21,821,620.00, for matters that have not yet been brought before the Ohio District Court due to the bankruptcy filing. Such potential claims include breach of fiduciary duty, breach of contract and fraudulent conveyance based on Tamariz's pre and post cancellation of policies. Accordingly, Nationwide is filing its Proof of Claim for an amount no less than as claimed in the Complaint, but in no way is this a waiver or an estoppel of

4045866v3

Nationwide's ability to claim such additional sums, including and up to the amount as scheduled by the Debtor as potentially due and owing, and as may be awarded by a court of competent jurisdiction for punitive damages, attorney fees, interest and costs.

4045866v3

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 6 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 5 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 1 of 24

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NATIONWIDE MUTUAL INSURANCE CO.     :
                        :
           Plaintiff,               :     Case No. C-2-08-1148
                        :
           v.                        :     JUDGE SARGUS
                        :
B. DIANE TAMARIZ-WALLACE, et al.,     :     Magistrate Judge Abel
                        :
           Defendants.            :

**VERIFIED AMENDED COMPLAINT**
**WITH JURY DEMAND ENDORSED HEREON**

Now comes Nationwide Mutual Insurance Company, by and through counsel, and for its amended complaint against B. Diane Tamariz-Wallace, Diane Tamariz & Associates, P.A., George T. Moran, Inc., and Moran Insurance Services, Inc. (collectively "Defendants") hereby states as follows:

**I.**     **PERSONAL JURISDICTION AND VENUE**

    1.     This Court has personal jurisdiction over Defendants because Defendants have transacted business in Ohio, caused tortious injury in Ohio, and entered into the agreements that are the subject of this action in Ohio.

    2.     Venue is proper in this district because the case was removed from the Franklin County Common Pleas Court, as set forth in 28 U.S.C. § 1441(e).

**II.**     **THE PARTIES**

    3.     Nationwide Mutual Insurance Company ("Nationwide") is a corporation duly created and organized under the laws of the State of Ohio.

    4.     Defendant B. Diane Tamariz-Wallace ("Tamariz") is a resident of the State of Maryland, and at all material times herein has been the sole or majority shareholder of

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 7 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 6 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 2 of 24

Defendants Diane Tamariz & Associates, P.A., George T. Moran, Inc., and Moran Insurance Services, Inc.

5.    Defendant Diane Tamariz & Associates, P.A. ("Tamariz & Associates") is a corporation duly created and organized under the laws of the State of Maryland.

6.    Defendant George T. Moran, Inc. ("George T. Moran, Inc.") is a corporation duly created and organized under the laws of the State of Maryland.

7.    Defendant Moran Insurance Services, Inc. ("Moran Insurance Agency" or the "Moran Agency") is a corporation duly created and organized under the laws of the State of Maryland.

8.    Non-Party Nationwide Bank is formerly known as Nationwide Federal Credit Union, a federally chartered credit union, and is now a federally chartered bank with its principal place of business in Columbus, Ohio ("Nationwide Bank").

### III.   FACTS COMMON TO ALL CLAIMS

   A.    Tamariz's Long History as a Nationwide Agent

9.    Tamariz has been an agent on behalf of Nationwide since approximately September 1989.

10.    During most of those almost 20 years, Tamariz was an independent contractor agent who owned and operated her own insurance agency, Tamariz & Associates.

11.    Tamariz is the sole shareholder of Tamariz & Associates.

12.    As the sole shareholder of Tamariz & Associates, Tamariz has sole control over all the operations of Tamariz & Associates, including decisions on leasing, employee staffing, agency marketing, acquiring agencies and books of business, and the like.

2

2843323v3

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 8 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 7 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 3 of 24

**B.**   <u>Tamariz Looks To Expand Her Agency</u>

13.   By 2004, Tamariz, with almost two decades in the insurance business, was an experienced and successful insurance agent who knew her business and knew the market in which she operated.

14.   In 2004, Tamariz began to look to expand her agency.

15.   Oftentimes, entrepreneurial exclusive agents like Tamariz desire to expand their business by acquiring other insurance agencies.

16.   Unfortunately for these exclusive agents like Tamariz, traditional commercial banks often refuse to loan money to agents for the purpose of acquiring other agencies since there are typically no hard assets or receivables that could be used a collateral to secure such a loan, since the insurance policies sold and premiums collected through an agency are not the property of the agency, but of the insurance company.

17.   In order to assist these agents in acquiring other agencies, Nationwide offers resources to them to assist in such expansion opportunities.

18.   Among the resources offered is access to credit that may not be available from a traditional commercial bank.

19.   Nationwide sponsors a loan program through its affiliate Nationwide Bank.

20.   This program is generally known as the Independent Agency Acquisition loan program ("IAA").

21.   IAA loans are generally made available to exclusive agents who want to purchase other agencies.

22.   The Bank underwrites such loans using its ordinary underwriting guidelines and offers such loans based in part upon a payment guarantee from Nationwide.

3

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 9 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 8 of 25

Case 2:08-cv-01148-EAS-MRA      Document 11      Filed 12/04/2008     Page 4 of 24

### C.      The Moran Agency

23.      In the fall of 2004, Tamariz identified an insurance agency that she potentially wanted to acquire for herself in the form of an agency operated by George T. Moran.

24.      On October 8, 2004, Tamariz signed a letter of intent to George T. Moran indicating that she desired to purchase 100% of the shares of his agency, George T. Moran, Inc. (the legal name of The Moran Agency).

25.      In the course of her investigation of this acquisition, Tamariz retained her own outside due diligence firm, WFC Capital Advisors.

26.      Tamariz also retained her own legal counsel who negotiated and drafted terms of the purchase agreement.

27.      Tamariz also took part in drafting a business plan and pro forma financial statements for her new agency.

28.      Tamariz's business plan indicated that her existing agency had been growing at an 18% annual rate, had an aggressive marketing program in place, and was "well positioned to seize this sales opportunity and penetrate these markets in all product lines."

### D.      Tamariz Acquires The Moran Agency

29.      On March 11, 2005, Tamariz signed a Stock Purchase Agreement whereby she agreed to personally acquire all of the outstanding shares of stock of George T. Moran, Inc.

30.      The closing for Tamariz's acquisition of George T. Moran, Inc. occurred in May 2005.

31.      Under the terms of the acquisition, Tamariz's paid $3 million for the Moran Agency -- $2.25 million of which was to be paid at closing and the remainder paid by two promissory notes in the respective amounts of $500,000 and $250,000.

4

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 10 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 9 of 25

Case 2:08-cv-01148-EAS-MRA     Document 11     Filed 12/04/2008     Page 5 of 24

32.     The $500,000 note was to be payable in two equal installments, with the first

$250,000 installment due in July 2006 and the second $250,000 installment due in July

2007.

33.     The remaining balance of the purchase price in the form of the $250,000 note

was to be payable in July 2008.

E.     **Tamariz Utilizes The IAA Program To Purchase The Moran Agency**

34.     In order to obtain the funds she needed to meet her down payment obligation

under the Stock Purchase Agreement, Tamariz chose to participate in the IAA program by

Nationwide.

35.     Pursuant to her participation in the IAA program, Tamariz acquired an IAA

loan from Nationwide Bank.

36.     On April 26, 2005, Tamariz and Tamariz & Associates borrowed from

Nationwide Bank the sum of $2.3 million, which loan was journalized in a certain Credit

Agreement and Promissory Note signed by Tamariz both in her individual capacity and an

officer of Tamariz & Associates (the "Promissory Note"). A true and accurate copy of the

Promissory Note is attached hereto as Exhibit A.

37.     To provide collateral to secure collection of monies loaned under the

Promissory Note, on or about April 26, 2005, Tamariz and Tamariz & Associates also

executed a Security Agreement, whereby they granted a security interest to Nationwide

Bank in "all commissions, extended earnings, deferred compensation incentive credits,

bonuses (including post-conversion bonuses and contingency bonuses), and any other

compensation now due or becoming due in the future under the Agent's Agreement or any

future Agent's Agreement executed by and between Nationwide and the Agent (collectively,

'Collateral')" (the "Security Agreement"). A true and accurate copy of the Security

Agreement is attached hereto as Exhibit B.

5

2843323v3

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 11 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 10 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 6 of 24

38.     The terms of the Promissory Note required Tamariz and Tamariz & Associates, as borrowers, to repay the $2.3 million loan over 288 semi-monthly installments (144 months) at a variable interest rate of prime plus one percent.

39.     Nationwide guaranteed to Nationwide Bank the repayment obligations of Tamariz and Tamariz & Associates under the loan.

**F.      Tamariz Defaults on the Promissory Note**

40.     In or about 2007, Tamariz and Tamariz & Associates stopped paying on their loan.

41.     As a result, Tamariz and Tamariz & Associates went into default under the terms of the Promissory Note.

42.     Under the Promissory Note's acceleration clause, upon default, all amounts outstanding under the loan became immediately due and owing in full and began to accrue interest at a rate of prime plus five percent.

43.     On or about June 23, 2008, Nationwide Bank assigned all of its right, title, and interest in the Promissory Note and the Security Agreement to Nationwide.

44.     Pursuant to that assignment, Nationwide is now the owner and holder of Promissory Note and Security Agreement, with full rights to enforce the terms thereon.

45.     As a 100% owner of George T. Moran, Inc. and Moran Insurance Services, Inc., Tamariz has continued to enjoy revenue and the other benefits of ownership of the Moran Agency while failing to pay the loan that provided substantially all of the funds for her to purchase that agency.

6

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 12 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 11 of 25

Case 2:08-cv-01148-EAS-MRA      Document 11      Filed 12/04/2008      Page 7 of 24

G.    **Tamariz Stops Selling Nationwide Policies and Begins Diverting Nationwide Customers To Other Insurance Companies.**

1.    **Corporate Agency Agreement**

46.    On June 21, 2004, Tamariz & Associates entered into a Corporate Agency Agreement with Nationwide. A true and accurate copy of the Corporate Agency Agreement is attached hereto as Exhibit C.

47.    Under the terms of the Corporate Agency Agreement, Tamariz & Associates, including its "Principal, directors, officers, and employees" were required to "represent Nationwide exclusively in the sale and service of insurance."

48.    As a result of their exclusive appointment as Nationwide agents, Tamariz & Associates and its owners, directors, officers, and employees agreed that they would not "solicit or write policies of insurance in companies" other than on behalf of Nationwide and Nationwide's related companies without the consent of Nationwide.

2.    **Corporate Associate Agent Agreement**

49.    On August 26, 2005, Nationwide, Tamariz & Associates, and Moran Insurance Services, Inc. entered into a Corporate Associate Agent Agreement ("Associate Agent Agreement"). A true and accurate copy of the Corporate Associate Agent Agreement is attached hereto as Exhibit D.

50.    The purpose of the Associate Agent Agreement was to allow Moran Insurance Services to act as an associate agent of Tamariz & Associates for the purpose of writing Nationwide business.

51.    The Associate Agent Agreement expressly stated that Moran Insurance Services was subject to all of the terms of the Corporate Agency Agreement, including the obligation to exclusively represent Nationwide in the sales and servicing of insurance.

7

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 13 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 12 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 8 of 24

**3.   Defendants sell business away from Nationwide and then stop offering or selling Nationwide policies altogether.**

52.   Upon information and belief, Defendants have systemically undertaken to sell business away from Nationwide and have ceased selling or offering for sale any Nationwide products.

53.   For instance, one Nationwide customer received an unsolicited letter from Tracy Mazurowski, an associate agent for the Moran Agency, providing a cost comparison for insurance between Nationwide and another insurer and urging the Nationwide customer to switch to the competing company.

54.   In another instance, on September 26, 2008, a potential customer visited Tamariz & Associates and was not provided a quotation for Nationwide insurance, but was thereafter provided quotations by Matt Lehman at the Moran Agency for insurance from two competing insurance companies.

55.   In another instance, on October 1, 2008, a potential customer visited Tamariz & Associates requesting an automobile insurance quotation from Nationwide, but was instead directed to contact the Moran Agency to obtain quotations for insurance.

56.   That potential customer proceeded to the Moran Agency and met with Tracy Mazurowski, who provided the customer a quotation from a competing insurance company.

57.   In another instance, on October 2, 2008, a potential customer visited Tamariz & Associates and requested a commercial insurance quotation for his HVAC company.

58.   Upon being asked by the potential customer whether Tamariz sold Nationwide commercial policies, the receptionist at Tamariz & Associates instructed the potential customer to travel to the Moran Agency because all of the company's underwriters were in that office.

8

2843323v3

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 14 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 13 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 9 of 24

59.     The receptionist gave the potential customer the name, address, and directions to the Moran Agency.

60.     The potential customer traveled to The Moran Agency and met with Mr. Lehman, who provided the potential customer a commercial automobile insurance quotation from a competing company and failed to offer an insurance quotation for Nationwide or otherwise mention Nationwide by name.

61.     In another instance, upon a Nationwide customer's decision to transfer his business out from the Moran Agency to another Nationwide agent, Mr. Lehman, on behalf of the Moran Agency, sent to this Nationwide customer an unsolicited quotation for insurance from a competing company and urged the Nationwide customer to switch his insurance coverage to that competing insurance company.

62.     Defendants, upon information and belief, have also ceased virtually all efforts to sell Nationwide's products and have instead begun selling and offering for sale the products of Nationwide's competitors.

63.     Tamariz & Associates and the Moran Agency collectively initiated only one quotation for Nationwide insurance during the entire month of August 2008, only three quotations for Nationwide insurance during the entire month of July 2008, and no quotations for Nationwide insurance during the entire month of June 2008.

**H.     Nationwide Terminates Its Agency Relationship With Defendants**

64.     The foregoing conduct of Tamariz & Associates and the Moran Agency constituted serious and ongoing breaches of contractual and fiduciary duties owing by these agencies to Nationwide, as well as a significant ongoing risk to Nationwide's relationship with its policyholders.

65.     As a result, on November 3, 2008, Nationwide gave notice to Defendants of the immediate cancellation of their agencies appointments with Nationwide.

9

2843323v3

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 15 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 14 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 10 of 24

## COUNT I
### Breach of Promissory Note/Amounts Due and Owing
### (Tamariz and Tamariz & Associates)

66.   Nationwide realleges and incorporates herein each and every allegation set forth above.

67.   As a result of the default of Tamariz and Tamariz & Associates under the Promissory Note, there is now currently due and owing to Nationwide principal and interest in the amount of $2,182,162.45, plus default interest accruing at a rate equal to the prime rate plus five percent per annum.

68.   Nationwide is entitled to judgment against Tamariz and Tamariz & Associates, jointly and severally, in the amount of $2,182,162.45, plus default interest accruing at a rate equal to the prime rate plus five percent per annum.

## COUNT II
### Equitable Indemnification
### (Tamariz and Tamariz & Associates)

69.   Nationwide realleges and incorporates herein each and every allegation set forth above.

70.   As consideration for the assignment of the Promissory Note and Security Agreement, Nationwide paid to Nationwide Bank an amount equal to all principal and interest that was then due and owing by Tamariz and Tamariz & Associates.

71.   Such payment was made pursuant to a guarantee Nationwide had made to Nationwide Bank.

72.   As a result of the foregoing, and in the alternative, Nationwide is entitled to equitable indemnification from Tamariz and Tamariz & Associates in an amount equal to all payments made to Nationwide Bank relating to Defendants' loans.

10

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 16 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 15 of 25

Case 2:08-cv-01148-EAS-MRA      Document 11      Filed 12/04/2008      Page 11 of 24

73.    As a result of its right to equitable indemnification, Nationwide is entitled to judgment against Tamariz and Tamariz & Associates jointly and severally in the amount of $2,182,162.45.

## COUNT III
### Breach of Corporate Agency Agreement
### (Tamariz & Associates)

74.    Nationwide realleges and incorporates herein each and every allegation set forth above.

75.    Tamariz & Associates, by virtue of its execution of the Corporate Agency Agreement, agreed to perform certain duties, including, without limitation, agreeing to represent Nationwide exclusively in the sale and service of insurance; agreeing not to solicit or write insurance policies with insurers other than Nationwide; and, agreeing to direct their efforts in the field of insurance toward advancing the business and interests of Nationwide to the best its ability.

76.    Tamariz & Associates breached its contractual duties as set forth above, including, without limitation, by switching, siphoning off, and facilitating the transfer of Nationwide policyholders to other insurers; refusing and failing to quote, sell, or offer for sale virtually any new Nationwide insurance policies during 2008; failing to use its best efforts to advance the business interests of Nationwide by acting in the aforesaid manner; interfering with Nationwide's right to retain and continue to provide insurance services to its policyholders and to continue to solicit such policyholders for additional business; inducing and/or encouraging Nationwide policyholders and potential Nationwide policyholders to obtain insurance from Nationwide's competitors; furnishing and sharing the names and contact information for Nationwide's policyholders to Tamariz's other agencies; utilizing Nationwide's confidential property, expirations, renewals, and trade secrets to directly or indirectly solicit, switch, or service the insurance business of

11

policyholders of Nationwide contrary to the terms and conditions of the Corporate Agency Agreement; and violating the non-competition restriction of the Corporate Agency Agreement.

77.     Tamariz & Associates' breaches of the Corporate Agency Agreement have caused damage to Nationwide, which will continue into the future, consisting of, but not limited to, loss of renewal business from existing policyholders, loss of new business from existing policyholders, and loss of new business from new policyholders.

78.     Nationwide has been damaged by the foregoing breaches of Tamariz & Associates in an amount in excess of $25,000.

## COUNT IV
### Breach of Corporate Associate Agent Agreement
### (Tamariz & Associates and Moran Insurance Services)

79.     Nationwide realleges and incorporates herein each and every allegation set forth above.

80.     Tamariz & Associates and Moran Insurance Services, by virtue of their execution of the Corporate Associate Agent Agreement, agreed to perform certain duties, including, without limitation, agreeing to represent Nationwide exclusively in the sale and service of insurance; agreeing not to solicit or write insurance policies with insurers other than Nationwide; and, agreeing to direct their efforts in the field of insurance toward advancing the business and interests of Nationwide to the best its ability.

81.     Tamariz & Associates and Moran Insurance Services breached their contractual duties as set forth above, including, without limitation, by switching, siphoning off, and facilitating the transfer of Nationwide policyholders to other insurers; refusing and failing to quote, sell, or offer for sale virtually any new Nationwide insurance policies during 2008; failing to use its best efforts to advance the business interests of Nationwide

12

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 18 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 17 of 25

Case 2:08-cv-01148-EAS-MRA      Document 11      Filed 12/04/2008      Page 13 of 24

by acting in the aforesaid manner; interfering with Nationwide's right to retain and continue to provide insurance services to its policyholders and to continue to solicit such policyholders for additional business; inducing and/or encouraging Nationwide policyholders and potential Nationwide policyholders to obtain insurance from Nationwide's competitors; furnishing and sharing the names and contact information for Nationwide's policyholders to Tamariz's other agencies; utilizing Nationwide's confidential property, expirations, renewals, and trade secrets to directly or indirectly solicit, switch, or service the insurance business of policyholders of Nationwide contrary to the terms and conditions of the Corporate Associate Agent Agreement; and violating the non-competition provision of the Corporate Agency Agreement and Corporate Associate Agent Agreement.

82.     Tamariz & Associates and Moran Insurance Services' breaches of the Corporate Associate Agent Agreement have caused damage to Nationwide, which will continue into the future, consisting of, but not limited to, loss of renewal business from existing policyholders, loss of new business from existing policyholders, and loss of new business from new policyholders.

83.     Nationwide has been damaged by the foregoing breaches of Tamariz & Associates and Moran Insurance Services in an amount in excess of $25,000.

## COUNT V
### Breach of Guaranty
### (Tamariz)

84.     Contemporaneously with Tamariz & Associates entering into the Corporate Agency Agreement, Tamariz personally entered into a Guaranty, whereby she personally guaranteed the performance of Tamariz & Associates under the Corporate Agency Agreement.

85.     Such guarantee was subsequently incorporated into the Corporate Associate Agent Agreement.

13

2843323v3

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 19 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 18 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 14 of 24

86.     Tamariz has waived any right to demand, protest, and notice under the Guaranty.

87.     Tamariz & Associates and Moran Insurance Services have breached the Corporate Agency Agreement and the Corporate Associate Agent Agreement as forth in the preceding paragraphs.

88.     Tamariz is therefore liable for all damages resulting from Tamariz & Associates' breaches of the Corporate Agency Agreement

89.     Nationwide has been damaged by the foregoing in an amount in excess of $25,000.

### COUNT VI
### Breach of Fiduciary/Agent Duties
### (All Defendants)

90.     Nationwide realleges and incorporates herein each and every allegation set forth above.

91.     Defendants, as insurance agents for Nationwide, occupied a position of trust and confidence in their contractual, agency, and/or fiduciary relationship with Nationwide.

92.     Defendants, as agents and fiduciaries of Nationwide, had the duty to deal with Nationwide with the utmost care, trustworthiness, fairness, honesty, loyalty, diligence, and fidelity, and to avoid putting themselves in a position in which their personal interests conflicted with their duties and obligations to Nationwide.

93.     Defendants have breached their fiduciary duties to Nationwide as alleged herein.

94.     As a direct and proximate cause of Defendants' fiduciary breaches, Nationwide has suffered damages in an amount in excess of $25,000.

2843323v3

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 20 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 19 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 15 of 24

95.    The actions and conduct of Defendants as set forth herein were undertaken in bad faith and with ill will and malice, entitling Nationwide to punitive damages in an amount to be determined at trial.

## COUNT VII
### Fraud
### (All Defendants)

96.    Nationwide realleges and incorporates herein each and every allegation set forth above.

97.    By virtue of their fiduciary and contractual relationship with Nationwide, Defendants owed a duty of disclosure and candor to Nationwide.

98.    Defendants intentionally concealed and failed to disclose to Nationwide, among other things their diversion and attempted diversion of hundreds of Nationwide customers to other insurers.

99.    In none of the foregoing instances did Defendants disclose to Nationwide that they had and were continuing to sell away and siphon off business from Nationwide or intended to not sell, offer to sell, or quote any further Nationwide business.

100.    Such information was material to Nationwide in that Nationwide would not have continued to engage Defendants as agents on their behalf and would not have guaranteed a $2.3 million loan on Defendants' behalf had they known of Defendants actions and true intentions.

101.    As a direct and proximate result of Defendants' conduct, Nationwide has suffered damages in an amount in excess of $25,000.

102.    The actions and conduct of Defendants as set forth herein were undertaken in bad faith and with ill will and malice, entitling Nationwide to punitive damages in an amount to be determined at trial.

15

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 21 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 20 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 16 of 24

## COUNT VIII
### Tortious Interference With Contract
### (All Defendants)

103.    Nationwide realleges and incorporates herein each and every allegation set forth above.

104.    Nationwide had contracts of insurance with certain of its customers, of which Defendants had knowledge, and therefore Defendants owed duties to Nationwide not to interfere with these insurance contracts.

105.    In numerous instances, Nationwide's customers either canceled or did not renew their insurance with Nationwide as a result of the intentional, improper instigation and inducement of Defendants to solicit, recommend, and divert said customers to other competing insurance carriers.

106.    Defendants intentionally interfered with these existing insurance contracts between Nationwide and its customers without justification and contrary to their contractual and fiduciary duties and obligations to Nationwide.

107.    The tortious actions of Defendants in interfering with the existing insurance contracts proximately caused damage to Nationwide, which will continue into the future, consisting of, but not limited to, loss of renewal business from existing policyholders, loss of new business from existing policyholders, and loss of new business from new policyholders.

108.    As a direct and proximate result of Defendants' conduct, Nationwide has suffered damages in an amount in excess of $25,000.

109.    The actions and conduct of Defendants as set forth were undertaken in bad faith and with ill will and malice, entitling Nationwide to punitive damages in an amount to be determined at trial.

16

2843323v3

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 22 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 21 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 17 of 24

## COUNT IX
### Tortious Interference With Prospective Business Relationship
### (All Defendants)

110.   Nationwide realleges and incorporates herein each and every allegation set forth above.

111.   Nationwide had certain potential contracts of insurance with potential customers, of which Defendants had knowledge or should have had knowledge and owed duties to Nationwide not to interfere with these potential insurance contracts.

112.   Nationwide's did not have the opportunity to enter into contracts with these potential customers as a result of the intentional, improper influence of Defendants, who either encouraged the potential policyholders to purchase insurance from another insurance company or failed to offer Nationwide insurance to the potential insured altogether.

113.   Defendants tortiously and/or intentionally interfered with these prospective insurance contracts without justification and contrary to their contractual and fiduciary duties and obligations to Nationwide.

114.   The tortious actions of Defendants in interfering with these prospective business relationships proximately caused damage to Nationwide, which will continue into the future, consisting of, but not limited to, loss of renewal business from existing policyholders, loss of new business from existing policyholders, and loss of new business from new policyholders.

115.   As a direct and proximate result of Defendants' conduct, Nationwide has suffered damages in an amount in excess of $25,000.

116.   The actions and conduct of Defendants as set forth were undertaken in bad faith and with ill will and malice, entitling Nationwide to punitive damages in an amount to be determined at trial.

17

2843323v3

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 23 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 22 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 18 of 24

## COUNT X
### Injunctive Relief
### (All Defendants)

117.   Nationwide realleges and incorporates herein each and every allegation set forth above.

118.   The Corporate Agency Agreement provides that, upon its cancellation, Nationwide retains the right to continue to provide insurance services to all of its customers serviced by Tamariz & Associates and to continue to solicit these customers for additional business.

119.   The Corporate Agency Agreement also provides that if its cancellation is other than a "qualified cancellation," Tamariz, Tamariz & Associates, and all their licensed employees are not permitted to, directly or indirectly, by and for themselves or as agents for another, or through others as their agent, engage in, or be licensed as, an agent, solicitor, representative, consultant or broker, or in any way be connected with, the fire, casualty, health, or life insurance business, within a 25-mile radius of any business location of Tamariz, Tamariz & Associates, or any of their licensed employees, for a period of one year from the date of cancellation of the Corporate Agency Agreement.

120.   A qualified cancellation is defined under the Corporate Agency Agreement as any cancellation that does not result because Tamariz, Tamariz & Associates, or any employee of Tamariz & Associates induced or attempted to induce, directly or indirectly, policyholders to lapse, cancel, or replace any insurance contract in force with Nationwide.

121.   The terms of the Corporate Agency Agreement are incorporated into the Corporate Associate Agent Agreement, making the terms of the Corporate Agency Agreement binding upon the Moran Insurance Agency and George T. Moran, Inc.

122.   Nationwide's cancellation of the Corporate Agency Agreement was not a qualified cancellation as defined therein.

18

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 24 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 23 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 19 of 24

123.   Defendants and their licensed employees are therefore prohibited under the Corporate Agency Agreement from being licensed as, or engaging in any activities in any manner in connection with the fire, casualty, health, or life insurance business within a 25-mile radius of any of their business locations, including soliciting or attempting to solicit Nationwide policyholders as a part thereof.

124.   Upon or after the cancellation of her Corporate Agency Agreement, Tamariz sent a letter to substantially all of the Nationwide policyholders serviced by Tamariz & Associates prior to the cancellation, in which she wrote:

> Dear Friends:
>
> Many of you will already have heard the news that Diane Tamariz & Associates PA is no longer offering insurance products marketed by Nationwide Insurance. * * *
>
> **The good news is that my team and I are now positioned to bring you several highly rated, extremely competitive insurance companies such as Hartford, Traveled, and Liberty Mutual who all want to bid on your insurance needs. With our many years of experience, insight and strong agency resources, we can shop the markets to find you the best insurance coverage at amazing savings.**
>
> **Let us do the work and help you save some significant money in time for the holidays!**
>
> On a more personal note, many of you know me as "Miss Diane" because I have been on your side through the years as more of a friend than an insurance agent. You know that Miss Diane is there for you and you can count on me to do right by you when you need me. That face has not changed.
>
> **You will soon receive a personal phone call from a member of our team to discuss your insurance needs. In the meantime, you can call me at the Edgewater office 410-956-3758 or on my cell at 410-279-6644 with your questions or concerns. Thank you as always for your trust and loyalty!**
>
> Sincerely,
>
> /s/ B. Diane Tamariz Wallace
>
> Diane Tamariz

19

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 25 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 24 of 25

Case 2:08-cv-01148-EAS-MRA      Document 11      Filed 12/04/2008      Page 20 of 24

**P.S. We know more about you and your needs than anyone in the Nationwide organization. We will continue to take care of you and save you money in the process.**

125.   Upon or after the cancellation of her Corporate Agency Agreement, Tamariz

also sent a letter to substantially all of the Nationwide policyholders serviced by Moran

Insurance Agency and George T. Moran, Inc. prior to the cancellation, in which she wrote:

Dear Friends:

Effective 11/2/08, Moran Insurance Services will no longer offer insurance products marketed by Nationwide Insurance. * * *

**My team and I are delighted to tell you that we are wonderfully positioned to work for you in a new and exciting way!!!**

**We now have the opportunity to bring you several highly rated, extremely competitive insurance companies. You have probably heard of some of these companies: Liberty Mutual, The Hartford, Travelers, Ohio Casualty, Safeco, Farmers, CAN, Encompass, Chubb, Progressive, Companion, Firemen's Fund, State Auto, Lititz, to name a few. Our carriers have all passed rigorous standards -- from service to competitiveness to excellent claims handling.**

**And here is the best news of all:  they all want to bid on your insurance needs.**

**We will find you the very best insurance coverage for the very best premium available -- and we will do so by shopping ou carriers markets, so you do not have to.**

**Our many years of experience, our market insight, and strong agency resources can help you stabilize your insurance budget -- whether personal or commercial -- with amazing savings and truly personal service.**

**We look forward to working with you.  Please call one of our business associated at 410-█████████ with any questions or concerns.**

Thank you,

/s/ B. Diane Tamariz Wallace

Diane Tamariz

20

2843323v3

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 26 of 49
Case 10-21874   Claim 21-1 Part 2   Filed 10/06/10   Page 25 of 25

Case 2:08-cv-01148-EAS-MRA   Document 11   Filed 12/04/2008   Page 21 of 24

**P.S. We know more about you and your needs than anyone in the Nationwide organization. We will continue to take care of you and save you money in the process.**

126.    As a result of the foregoing, Nationwide is being irreparably harmed for which there is no adequate remedy at law and is entitled to immediate injunctive relief restraining and enjoining Defendants from violating the non-competition provision of the Corporate Agency Agreement and Corporate Associate Agent Agreement.

127.    Nationwide is entitled to, and intends to seek, recovery of the attorneys' fees it incurs in enforcing the terms of the Corporate Agency Agreement and Corporate Associate Agent Agreement.

WHEREFORE, Nationwide requests that it be granted judgment in its favor and that the Court award it injunctive relief and compensatory and punitive damages in an amount that will be proven at trial, together with prejudgment and post-judgment interest, attorneys' fees and costs, and such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Quintin F. Lindsmith
Quintin F. Lindsmith (0018327)
James P. Schuck (0072356)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio 43215
(614) 227-2300
(614) 227-2390 (facsimile)
qlindsmith@bricker.com
jschuck@bricker.com

*Attorneys for Plaintiff*

21

### JURY DEMAND

Nationwide demands a trial by jury on all issues so triable.

/s/ Quintin F. Lindsmith
Quintin F. Lindsmith

2843323v3

## VERIFICATION

The undersigned hereby verifies, based upon his personal knowledge and information made available to him as a duly authorized representative of Plaintiff Nationwide Mutual Insurance Company, that the foregoing is true and correct to the best of his knowledge.

John-Paul Purssord

2843323v1

### CERTIFICATE OF SERVICE

The foregoing document was filed and served this 4th day of December, 2008, upon counsel of record via the Court's electronic filing and notification system. Copies of this document and all attachments and exhibits may be accessed through the Court's electronic filing system.

*/s/ Quintin F. Lindsmith*
Quintin F. Lindsmith

2843323v3

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 30 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 4 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-2   Filed 12/04/2008   Page 1 of 4

# CREDIT AGREEMENT AND PROMISSORY NOTE
### *(Principal & Interest)*

**$2,300,000.00**                                    Date: Apr 26, 2005

For value received in the amount of $2,300,000.00 ("Loan") from Nationwide Federal Credit Union, a federal credit union ("NFCU"), B. Diane Tamariz-Wallace and Diane Tamariz-Wallace & Associates, PA, an exclusive third-party agent (hereinafter, "Borrower") of Nationwide Mutual Insurance Company ("Nationwide") promises to pay to the order of NFCU, its holders, successors and/or assigns (hereinafter, "Payee"), 288 semi monthly installments of principal amortized over the term of the Loan and interest, beginning with the payment due on May 15th 2005, & the Last & the 15th day of each month thereafter until all unpaid portions of the Loan principal, interest and other amounts herein provided are re-paid (the "Maturity Date"). Interest shall accrue on the unpaid principal balance of the Loan at a variable rate adjusted quarterly equal to Prime (as hereinafter defined) plus One Percent (1%) per annum, provided that Borrower repays the Loan by automatic deductions from Borrower's compensation due from Nationwide. If Borrower terminates the automatic deduction from the Agent's compensation due from Nationwide or any part thereof at anytime during the repayment term of this Note, the rate of interest provided for herein shall be adjusted by NFCU at the time such deductions cease to a variable rate adjusted quarterly equal to Prime plus Two & one half Percent (2.50%) in order to compensate NFCU for the additional costs of processing, accounting and collection and for the additional risk of non-payment or late payment, and the amount of Borrower's monthly payments shall be adjusted as provided in a notice to be sent from Payee to Borrower. Not withstanding the foregoing or any other provision in this Credit Agreement and Promissory Note ("Note"), no interest rate provided for in this Note or the other Loan Documents shall ever exceed the maximum interest rate which a federal credit union is permitted to charge its members or the maximum interest rate which is permitted by applicable state law, whichever is less. "Prime" shall be the prime lending rate listed in the Wall Street Journal (or such other index as the parties may agree from time to time) on the Fifteenth (15th) day (or first day thereafter when such rate is published) of March, June, September and December commencing in the calendar quarter in which the any proceeds of the Loan are first disbursed, and shall be reset on the first day of each calendar quarter thereafter. Borrower understands and agrees that this Note may be freely transferred and assigned by NFCU or any subsequent holder thereof.

The term of this Loan is anticipated to be 144 months from the date proceeds are first disbursed to Borrower. Borrower understands and agrees that NFCU may adjust either the term or the amount of the monthly payment if Prime varies, resulting in a change in the interest rate charged by NFCU for this Loan. Borrower also understands and agrees that the date on which this Loan matures may be accelerated if Borrower does not continue to participate in the Agent Program to which this Loan is related.



Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 31 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 5 of 23

Case 2:08-cv-01148-EAS-MRA      Document 11-2      Filed 12/04/2008      Page 2 of 4

Upon termination of Borrower's Agent's Agreement with Nationwide, upon the bankruptcy or insolvency of Borrower, upon Borrower's death or incompetence, upon the failure of Borrower to pay in full any installment hereunder when due (provided that Borrower shall have a Thirty (30) day period after receiving written notice from Payee to cure such non-payment), upon Payee's discovery that any information provided by Borrower in connection with the Loan was false or materially misleading, upon Borrower's failure to provide any other or additional information reasonably requested by Payee in connection with the Loan, and/or upon a default by Borrower of any other Loan under this or any other Program, Borrower agrees that this Loan shall be in Default, and the entire amount of the outstanding Loan balance, plus all accrued interest and other amounts provided for hereunder, shall become immediately due and payable to Payee. If Borrower's Loan shall be in Default past any applicable cure period provided herein, the unpaid balance of the Loan shall bear interest at a rate equal to the lesser of Prime plus Five Percent (5%) per annum or the maximum interest rate permitted by law from the date of Default until paid in full. Sums shall be deemed paid upon receipt of same by Payee, unless payment is made by check, in which case sums shall be deemed paid upon non-reversible payment of proceeds to the account of Payee. Borrower shall pay a "Late Payment Fee" of Fifteen Dollars ($15.00) if Borrower's payment is more than Ten (10) days late, and a "Returned Check Fee" of Twenty-five Dollars ($25.00) if Borrower pays by check and the check is returned unpaid for insufficient funds or for any other reason. There shall be no penalty for prepayment of the Loan. <u>A Default of this Loan shall constitute a Default with respect to any other loan or credit obtained by the Agent from NFCU, and this Loan shall be cross-collateralized with any other collateral in which NFCU has a security interest in connection with such other loans or credit.</u>

<u>STATUTORY LIEN.</u> IF THE BORROWER IS IN DEFAULT AS PROVIDED HEREIN OR ON ANY FINANCIAL OBLIGATION TO NFCU, FEDERAL LAW GIVES NFCU THE RIGHT TO APPLY ALL OR ANY PART OF THE BORROWER'S SHARES AND DIVIDENDS IN BORROWER'S ACCOUNTS AT NFCU AT THE TIME OF BORROWER'S DEFAULT OR ANY TIME THEREAFTER IN ORDER TO SATISFY THOSE OBLIGATIONS. ONCE BORROWER IS IN DEFAULT, NFCU MAY EXERCISE THE RIGHTS RESERVED HEREUNDER WITHOUT FURTHER NOTICE TO BORROWER.

Payments received from Borrower shall first be applied to payment of any late charge, fees or costs incurred by Payee in connection with the Loan, including any collection costs or attorneys' fees; second to payment of accrued interest; third to the outstanding principal balance of the Loan; and fourth, to any other cost, charge or fee relating to the Program of which Payee has knowledge.

Presentment, notice of dishonor and protest are hereby waived by the Borrower, and all sureties, guarantors and endorsers hereof. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their heirs, personal representatives, executors, administrators, successors and assigns.



Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 32 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 6 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-2   Filed 12/04/2008   Page 3 of 4

Borrower hereby transfers and assigns to Payee, its successors and/or assigns, any and all payments due Borrower under Borrower's Agent's Agreement or any Agent's Agreement executed hereafter with Nationwide (hereinafter, "Collateral") for the purpose of satisfying the Loan. This assignment of Collateral shall include all commissions, extended earnings, deferred compensation incentive credits, bonuses (including post-conversion bonuses and contingency bonuses), and any other compensation due Borrower from Nationwide under the Agent's Agreement, now or at any time hereafter, and upon the termination of the Borrower's Agent's Agreement, such amounts due the Agent shall first be applied in their entirety to any outstanding indebtedness owed to the Payee in connection with the Loan, provided however, that this requirement shall not entitle Borrower to such Collateral if Borrower defaults on such Agent's Agreement and loses its rights to such Collateral. If Borrower's Agent's Agreement with Nationwide is terminated for any reason and a new Agent's Agreement is not promptly entered into between Nationwide and Borrower, Borrower agrees that any and all amounts due from Nationwide of any nature whatsoever, whether constituting Collateral (as hereinafter defined) or not, shall first be paid to NFCU to satisfy in full any amounts due and owing under this Loan before Borrower shall be entitled to receive any remaining proceeds.

Borrower agrees that this Note shall be binding on Borrower as an individual, and if Borrower's agency is a partnership or corporation, this Note shall also be binding on Borrower's partnership or corporation. If Borrower's agency is a partnership or corporation, Borrower agrees to submit an original executed resolution which binds the partnership or corporation to this Note.

This Note was negotiated and accepted by the parties in the State of Ohio, and the Loan to be disbursed by NFCU in connection herewith is to be disbursed from Ohio. Therefore, Borrower agrees that the State of Ohio has a substantial relationship to the transaction contemplated herein, and agrees that this Note, and the rights and obligations of Borrower hereunder, shall be governed by the laws of the State of Ohio, excluding Ohio's conflicts of law provisions.

NOTICE OF DISCLOSURE:  THIS LOAN IS MADE FOR BUSINESS PURPOSES ONLY. BORROWER UNDERSTANDS THAT PAYEE MUST DISCLOSE CERTAIN INFORMATION TO NATIONWIDE, AND NATIONWIDE MUST DISCLOSE CERTAIN INFORMATION TO PAYEE RELATING TO BORROWER'S BUSINESS OPERATONS, BUSINESS PLANS AND THIS LOAN.  IN ADDITION, NATIONWIDE MAY PARTICIPATE IN THE LOAN WITH PAYEE. IF NATIONWIDE PARTICIPATES IN THE LOAN, NATIONWIDE WILL BE ENTITLED TO DISCLOSURE OF CERTAIN ADDITIONAL INFORMATION RELATED TO THE LOAN. BY EXECUTING THIS NOTE, BORROWER UNDERSTANDS THAT CERTAIN INFORMATION WILL BE DISCLOSED 

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 33 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 7 of 23

Case 2:08-cv-01148-EAS-MRA     Document 11-2     Filed 12/04/2008     Page 4 of 4

BETWEEN PAYEE AND NATIONWIDE, AND BORROWER
HEREBY WAIVES ANY PRIVACY RIGHTS BORROWER
MAY HAVE IN CONNECTION WITH SUCH INFORMATION.
NOTWITH-STANDING THE FOREGOING, PAYEE WILL <u>NOT</u>
DISCLOSE   ANY   INFORMATION   TO   NATIONWIDE
RELATING TO BORROWER'S CREDIT OR INFORMATION
WHICH PAYEE OBTAINS ONLY FROM BORROWER'S
CREDIT REPORT.

<u>IMPORTANT</u>:  THE LOAN PROVIDED FOR IN THIS NOTE
SHALL REMAIN THE OBLIGATION OF BORROWER
REGARDLESS OF WHETHER NATIONWIDE REIMBURSES
PAYEE FOR ALL OR ANY PART OF THE LOAN.   IF
BORROWER QUALIFIES UNDER THE PROGRAM FOR
REIMBURSEMENT BY NATIONWIDE OF ONLY PART OF
THE LOAN, BORROWER SHALL REMAIN LIABLE FOR ANY
REMAINING BALANCE OF THE LOAN WHICH IS NOT
REIMBURSED BY NATIONWIDE.

AGENT:                                              AGENCY:

X _B Diane Tamariz Wallace_   X _DIANE TAMARIZ + ASSOCIATES PA_
Signature of Borrower                      Name of Agency
                                                     (Check box of legal form of agency)
X _B Diane Tamariz Wallace_      ✓Corporation   Partnership   LLC   LLP
Name of Borrower                           Sole Proprietorship
_Diane Tamariz-Wallace_
X _2417 Solomons Island Rd_     X _Diane Tamariz Wallace_
Address _Edgewater Md    21037_       Signature of Authorized Officer/Partner

X _████ 155_                              X _2417 Solomons Island Rd_
Agent #                                           Address _Edgewater Md  21037_

                          DIANE TAMARIZ/WALLACE, AGENT
                          DIANE TAMARIZ & ASSOCIATES, PA
                          2417 SOLOMONS ISLAND RD.
                          EDGEWATER, MD 21037

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 34 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 8 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-3   Filed 12/04/2008   Page 1 of 2

# SECURITY AGREEMENT

For value received, the undersigned exclusive third-party agent ("Agent") of Nationwide Mutual Insurance Company ("Nationwide"), grants unto Nationwide Federal Credit Union, its successors and/or assigns ("NFCU"), a security interest in *all commissions, extended earnings, deferred compensation incentive credits, bonuses (including post-conversion bonuses and contingency bonuses), and any other compensation now due or becoming due in the future under the Agent's Agreement or any future Agent's Agreement executed by and between Nationwide and the Agent* (collectively, "Collateral"). Agent represents and warrants that no one else, other than NFCU and/or Nationwide, has any interest or claim against the Collateral that has not already been disclosed to NFCU as set forth below, including any claim of an ex-spouse by virtue of a divorce order or Qualified Domestic Relations Order ("QDRO"). Subject to any other restrictions with respect to the Collateral, Agent promises not to use the Collateral as security for a loan with any other lender, creditor or any other person until any loan or loans ("Loan" or "Loans") made to Agent by NFCU in connection with any agency business development programs sponsored by Nationwide (hereinafter, the "Program" or "Programs") is/are repaid in full, without NFCU's and/or Nationwide's prior written consent.

Upon termination of the Agent's Agreement with Nationwide, upon Agent's bankruptcy or insolvency, upon Agent's death or incompetence, if Agent fails to pay in full any Loan installment when due, if Agent provides any false information in connection with a Loan and/or Loan application process, upon a default by Agent of any other Loan under this or any other Program, or if Agent fails to provide any other or additional information required or requested by NFCU or Nationwide from time to time in connection with a Loan, Agent agrees that the entire outstanding principal balance of all Loans, plus all accrued interest and other amounts, shall become immediately due and payable, and may be deducted from the Collateral to repay all Loans in full or to the fullest extent possible. If Agent's Agreement with Nationwide is terminated for any reason and a new Agent's Agreement is not promptly entered into between Nationwide and Agent, Agent agrees that any and all amounts due from Nationwide of any nature whatsoever, whether constituting Collateral or not, shall first be paid to NFCU to satisfy in full any amounts due and owing in connection with all Loans before Agent shall be entitled to receive any remaining proceeds.

_____ Agent has used the following amounts of the Collateral as security for loans other than for Loans from NFCU in connection with any Programs: $_____

_____ A claim against the Collateral (other than a security interest of NFCU under any Program) has been made in the following amount: $_____, by:

**X** Agent has not used any of the Collateral as security for any other loans other than Loans with NFCU in connection with the Programs, nor have any claims been made against the Collateral by any other person.

Agent agrees that this Security Agreement shall be binding on Agent as an individual, and if Agent is a partnership or corporation, this Security Agreement shall also be binding on such partnership or corporation. If Agent is a partnership, limited liability company or corporation, Agent agrees to submit an original executed resolution with this Security Agreement which binds the partnership, limited liability company or corporation to this Security Agreement.

This Security Agreement was negotiated and accepted by the parties in the State of Ohio, and the Loan to be disbursed by NFCU in connection herewith is to be disbursed from Ohio. Therefore, Agent agrees that the State of Ohio has a substantial relationship to the transaction contemplated herein, and agrees that this Security Agreement, and the rights and obligations of the parties hereunder, shall be governed by the laws of the State of Ohio, excluding Ohio's conflict of law provisions.

Agent understands and agrees that this Security Agreement may be freely transferred and assigned by NFCU or any subsequent holder hereof.

AGENT:

X *Diane Tamariz Wallace*
Signature of Agent

X B Diane Tamariz Wallace
Name of Agent

X 2417 Vineyard Lane
Address Crofton, Md 21114

X _____ 855
Agent #

AGENCY:

X Diane Tamariz e Assoc PA
Name of Agency
(Check box of legal form of agency)
  Corporation   Partnership   LLC   LLP
  Sole Proprietorship

X *Diane Tamariz Wallace*
Signature of Authorized Officer/Partner

X 2417 Vineyard Lane
Address Crofton Md 21114

**Note:** *If the Agency is a corporation or LLC, a certified corporate resolution authorizing the transaction must be attached. If the Agency is a partnership or LLP, a document authorizing the transaction signed by all general partners must be attached.*

**Agency Security Compensation Assignment Approved:**

Nationwide Mutual Insurance Company

By: _____

Print: _____

Its: _____

Date: _____

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 36 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 10 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-4   Filed 12/04/2008   Page 1 of 12

## CORPORATE AGENCY AGREEMENT

### Preface

It is the intent of this Agreement to define the conditions governing the business relationship between the parties involved. Only if both parties understand their duties and responsibilities can a mutually satisfactory relationship be established and maintained. The overall objectives of this Agreement are:

1. To provide a relationship which will result in the best possible service to the customer and continue a relationship with the Principal.

2. To assist the Agency in establishing and maintaining a growing agency which is profitable to both the Agency and the Companies.

3. To maintain the Companies' financial strength at the level necessary to protect the policyholder's interests.

### Agency Appointment

Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance Company, Nationwide General Insurance Company, Nationwide Property and Casualty Insurance Company, Nationwide Assurance Company, Nationwide Insurance Company of Florida, Colonial County Mutual Insurance Company, and Nationwide Lloyds, collectively referred to in this Agreement as, "we," "us," "Nationwide" or the "Companies," insurance corporations organized and existing under the laws of the States of Ohio, Wisconsin and Texas with their principal offices located at Columbus, Ohio appoint, for those Companies which are authorized in the State listed below.

<u>Diane Tamariz & Associates, PA</u>
Name

referred to in this Agreement as "Agency" of

<u>3147 Solomons Island Rd., Edgewater</u> , to
Address

serve as an agent for Nationwide in <u>MD 21037</u> ,
State

while properly licensed so to act in accordance with the provisions of this Agreement. Whenever used in this Agreement the term "Principal" shall mean Diane Tamariz-Wallace.

1. <u>Agency Operation</u>. The Agency shall determine the time, place, and manner of soliciting insurance, servicing policyholders, and otherwise carrying out the provisions of this Agreement. Such services shall be performed by, or under the supervision of, the Principal. In no event will the name "Nationwide" or "Colonial" be utilized as a part of the Agency name. Insurance being a closely regulated business, it is

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 37 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 11 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-4   Filed 12/04/2008   Page 2 of 12

understood that it will be necessary for Nationwide to provide the Agency with certain manuals, forms, records, and such other materials and supplies as are necessary in the conduct of an insurance business. All such property furnished to agency by Nationwide or on behalf of Nationwide shall remain the property of Nationwide and be returned to them in good condition upon any cancellation of this Agreement. Nationwide may offer to the Agency and its employees, from time to time, training, counsel, and guidance based upon its accumulated experience in the sale and servicing of business; however, it is understood that the Agency may reject or accept such offers at its discretion.   In order to comply with the requirements of the Tax Equity and Fiscal Responsibility Act of 1982, this is to remind you that the Agency is a corporation and is an independent contractor and not an employee and, as such independent contractor, is solely responsible for paying all federal, state, and local taxes as well as the timely and correct reporting, withholding, and paying of all taxes.

2.    Expenses.   Agency will pay all expenses in connection with its Nationwide insurance agency.   Agency will not incur any indebtedness on behalf of Nationwide in connection with expenses resulting from its Nationwide agency.

3.    Licenses.   Agency will be responsible for securing and keeping in effect any required license, as well as those of any officer or employee, to represent Nationwide as an agent.   Agency agrees not to solicit any lines of insurance unless it has the required license authorizing it to do so.

4.    Exclusive Representation.   It is agreed and understood that the Agency, its Principal, directors, officers and employees, will represent Nationwide exclusively in the sale and service of insurance. Such exclusive representation shall mean that they will not solicit or write policies of insurance in companies other than those parties to this Agreement, either directly or indirectly, without the written consent of Nationwide.   It is not intended that the incidental use of voluntary or statutory state or federal insurance plans, or other similar agreements, shall be a violation of this clause.

5.    General Conduct and Representation.   The Agency through its Principal, directors, officers, and employees will maintain a good reputation in the community which it serves and will direct its efforts in the field of insurance toward advancing the business and interest of Nationwide to the best of Agency's ability.   In the conduct of Agency business, the Agency will comply with all applicable insurance laws and regulations.

6.    Company Funds.   All funds coming into the Agency's possession from customers as premiums or considerations for insurance policies issued by Nationwide are funds of Nationwide received by Agency in a fiduciary capacity and shall be immediately remitted to Nationwide. If any such funds are not remitted, Nationwide shall have a first lien on all sums due or which may become due Agency to the extent of such funds.   Each of the Companies is authorized to deduct the entire

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 38 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 12 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-4   Filed 12/04/2008   Page 3 of 12

amount of such funds due, either before or after the cancellation of this Agreement, from any sums due the Agency.

7. **Compensation.** Any sums due the Agency under this Agreement from any of the Companies may be paid on their behalf to Agency by any of the other Companies. For all services rendered under this Agreement by the Agency, it shall be compensated solely in accordance with the General Conditions and the Schedules of each Company, attached hereto and made a part hereof except for such additional sums payable to Agency under paragraph 11.

Should Nationwide desire to amend its General Conditions or Schedules, written notification of such amendment shall be given to the Agency prior to its effective date, and shall become a part of this contract on its effective date.

8. **Overpayment of Compensation.** Any sums paid to the Agency for premiums later returned or credited to the customer or any other overpayment of sums shall be a debt due Nationwide from the Agency. In addition to all other rights available to Nationwide as a creditor, Nationwide shall have the right to deduct such sums or overpayment from any future sums due the Agency.

9. **Cancellation.** This Agreement shall be in force until canceled by either party.

This Agreement shall automatically cancel upon the date the Agency's or its Principal's appointment or license to act as an agent for Nationwide is revoked or canceled, or upon death, permanent and total disability or retirement of the Principal of the Agency. Further, the Agency or Nationwide have the right to cancel this Agreement at any time with or without cause, after written notice has been delivered to the other or mailed to the other's last known address. It is understood that the Agency shall have access to the Agents Administrative Review Board, and its procedures, as may exist from time to time.

10. **Service to Customer Upon Cancellation.** Upon cancellation of this Agreement, it is understood that Nationwide retains the right to continue to provide insurance services to any and all customers and to continue to solicit such customers for additional business.

11. **Agencies Activities After Cancellation.** Agency agrees that if the Agreement is canceled prior to Agency meeting the qualification under Paragraph 12 of this Agreement or five years from the effective date of Agency Principal's first Agency Agreement with Company, the Agency, Principal or any other licensed employee will not, either directly or indirectly, by and for themselves or as agents for another or through others as their agent, engage in or be licensed as an agent, solicitor, representative, consultant or broker or in any way be connected with the fire, casualty, health or life insurance business, within a 25-mile radius or any business location of the Agency or any business location of the Principal or licensed employee for a period of one year from the date of the voluntary or involuntary cancellation

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 39 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 13 of 23

Case 2:08-cv-01148-EAS-MRA      Document 11-4      Filed 12/04/2008      Page 4 of 12

of this Agreement, or should the Companies find it necessary by legal action to enjoin Agency from competing with the Companies, one year after the date such injunction is obtained.

In any jurisdiction where a covenant similar to the one appearing in the paragraph above is held to be invalid either by statute or by judicial decision, the Agency, the Principal, or any licensed employee agree that upon cancellation of this Agreement, the Agency, its Principal and employees shall thereafter refrain from further solicitation of servicing of policyholders of the Companies and from interfering in any way for a period of one year with existing policies and policyholders in the geographical area described in the aforementioned paragraph.

In the event that the Companies are successful in any suit or proceeding brought or instituted by them to enforce any of the provisions of this Agreement, or on account of any damages sustained by them by reason of the violation by the Agency, the Principal, or any licensed employee of the terms and/or provisions of this Agreement, the Agency, Principal, or licensed employee jointly and severally agree to pay to the Companies such reasonable attorney's fees as are permitted by statute and/or fixed by the court.

12.   Agency Security Compensation.

a.     Computation of Deferred Compensation Incentive Credits.

For each full calendar year the Agency acts as an agent for the Companies, beginning in the first year its annual DCIC Class Earnings equal or exceed the Threshold Amount, until August 1, 2019, the Companies will credit to the Agency's account as Deferred Compensation Incentive Credits the percentage set forth below of its DCIC Class Earnings. The Threshold Amount is four times the minimum amount of earnings for which Deferred Compensation Incentive Credits will be credited as set forth in the table below and as further adjusted from time to time in accordance with this paragraph 12-a. DCIC Class Earnings are identified as the Agency's annual original and renewal service fee earnings, including earnings from Nationwide Financial Services, Inc., but excluding earnings from joint underwriting associations, reinsurance facilities, auto insurance plans, the variable life policy known as "Investment Life," and line 19 auto business, and limiting earnings from Nationwide Assurance Company business to 25% of such earnings.

0% of such earnings under $16,900.00
3% of such earnings from $16,900.00 to $25,200.00
6% of such earnings from $25,201.00 to $33,700.00
10% of such earnings from $33,701.00 to $42,200.00
15% of such earnings from $42,201.00 to $1,000,000.00
10% of such earnings in excess of $1,000,000.00

It is understood that the Deferred Compensation Incentive Credit formula set out above is applicable to credits calculated for the

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 40 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 14 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-4   Filed 12/04/2008   Page 5 of 12

calendar years of 2003 and 2004 only. For each succeeding two (2) year period, the formula ranges shall be adjusted based on fifty (50) percent of the percentage change that has occurred in the Consumer Price Index (CPI) for all Urban Consumers, U.S., City Average, All Items during the preceding two (2) year period. (The change in the CPI will be measured over a two year period based on the month of June, with formula changes, if any, effective the following January 1.) These changes will be communicated prior to their effective date and shall supersede the previous formula.

b.  Extended Earnings Payable Upon Qualified Cancellation as an Agency.

When the Agency qualifies for the Deferred Compensation Incentive Credits, it will also qualify for extended earnings payable upon qualified cancellation of this Agreement. Upon qualified cancellation of this Agreement an amount equal to the renewal service fees paid to the Agency by each company for the last full twelve (12) calendar months immediately proceeding such cancellation subject to the following exceptions:

(1)  Renewal service fees earned from joint underwriting associations and state automobile insurance plans shall be excluded.

(2)  For purposes of extended earnings renewal services shall be reduced by 50% on reinsurance facility and line 19 auto business.

(3)  Extended earnings on Nationwide General business shall be calculated at 70% of the last 12 months total compensation paid to you on such business.

(4)  Extended earnings on Nationwide Assurance Business shall be calculated at 25% of the last 12 months total compensation paid to the agent.

(5)  Extended earnings will be retroactively reduced by the amount of renewal commissions originally included in the extended earnings calculation on any policy or commercial account which does not renew in the 12 months following cancellation of this agreement on which policy or account the Agency was paid $20,000 or more in renewal commissions during the preceding 12 month period. This chargeback will not apply if cancellation of this agreement occurs due to death, permanent and total disability, or attainment of age 65 of the Principal of the Agency.

c.  Amounts Payable Upon Qualified Cancellation.

(1)  Upon qualified cancellation for reasons of death or total and permanent disability of the Principal which results in the cancellation of this Agreement, Nationwide will pay the

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 41 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 15 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-4   Filed 12/04/2008   Page 6 of 12

Agency the amount of Extended Earnings determined under subparagraph 12-b hereof plus 100% of the amount of Deferred Compensation Incentive Credits determined under subparagraph 12-a hereof.

(2)  If Nationwide cancels this Agreement for reasons other than death or total and permanent disability of the Principal, Nationwide will pay to Agency 100% of the amount of Extended Earnings determined under subparagraph 12-b hereof plus a percentage of Deferred Compensation Incentive Credits based upon the following table, subject to the limits of paragraph 12d.(2)

(a)  50% of Benefit Payable - On August 13, 1994.

(b)  10% Additional Benefit Payable for each year after the date listed in paragraph (2)(a) above is attained, subject to a maximum under (a) and (b) of 100% of such benefit.

d.  Provisions for Payment.

After deducting any amount paid to Agency under this paragraph for cancellation or termination of any prior Agreement by Agency, or any amounts due Nationwide from Agency, Nationwide will pay to Agency:

(1)  Agency's Extended Earnings divided into ten (10) equal parts as follows:

Commencing within sixty (60) days following qualified termination of this Agreement:

This first part shall be payable in twelve (12) equal monthly installments, each monthly installment after the first, on the first day of subsequent consecutive months.

The remaining parts shall be paid in equal annual installments, the first annual installment payable thirty (30) days after payment of the last monthly installment and each other annual installment thereafter on the anniversary of that date until paid. At Agency's election, such annual installments may be made in equal monthly payments.

(2)  The amount of Deferred Compensation Incentive Credits to which Agency is entitled payable in ten (10) equal parts as follows:

Commencing sixty (60) days after the death or total and permanent disability of the principal, which results in the cancellation of this Agreement, or sixty (60) days after the other qualified cancellation of this Agreement.

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 42 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 16 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-4   Filed 12/04/2008   Page 7 of 12

It is understood that in the event such payment would
commence prior to August 1, 2014 (the Starting Date), for
reasons other than the death or total and permanent
disability of the principal, such payments shall be reduced
to the percentages shown in the following table:

| DISCOUNTED BENEFIT SCHEDULE, AGES 50 TO 60 | |
|---|---|
| Age At Which Benefit Payments Commence | Percent Of Accrued Benefits To Be Paid |
| 60 | 100.00% |
| 59 | 94.34% |
| 58 | 89.00% |
| 57 | 83.96% |
| 56 | 79.21% |
| 55 | 74.73% |
| 54 | 70.50% |
| 53 | 66.51% |
| 52 | 62.74% |
| 51 | 59.19% |
| 50 | 55.84% |
| Under 50 | None |

These sums shall be payable as outlined in d(1) above.

(3)   Election for Different Payment.

At Agency's written election, received by Nationwide prior
to the time of cancellation of this Agreement, Nationwide
will agree to make payments of Extended Earnings and/or
Deferred Compensation Incentive Credits in not less than
three(3) nor more than ten (10) equal parts, commencing
within sixty (60) days after qualified cancellation or such
other later date as provided by the election and the terms
of this Agreement, and the parts shall be payable as in d(1)
above.

Amounts payable as Deferred Compensation Incentive Credits,
regardless of election, are not payable prior to August 1,
2004, except in the case of the death or total and permanent
disability of the Principal.

(4)   Payment in Event of Employment of the Principal.

If this Agreement is canceled as a result of the employment
of the Principal of the Agency by the Companies, payments
shall be deferred until the separation of the Principal as
an employee from the Companies, or death or total and
permanent disability of the Principal.   At that time,
payment shall commence as provided by this paragraph 12 as
if employment had not intervened.

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 43 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 17 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-4   Filed 12/04/2008   Page 8 of 12

e.   Qualified Cancellation.

Unless Agency, Agency's Principal, or any employee of Agency induced or attempted to induce, either directly or indirectly, policyholders to lapse, cancel, or replace any insurance contract in force with Nationwide, the cancellation of this Agreement shall be a qualified cancellation for the purpose of this Agreement.

f.   Cessation of Agency Security Compensation.

All liability of Nationwide for Agency Security Compensation provided for in paragraph 12, and its subparagraphs shall cease and terminate in the event any one or more of the following shall occur:

(1)   Agency, Agency's Principal, or any employee of Agency, either directly or indirectly, by and for themselves or as agent for another, or through others as their agent, engage in or be licensed as an agent, solicitor, representative, or broker, or in any way be connected with the fire, casualty, health, or life insurance business within one year following cancellation within a twenty-five (25) mile radius of Agency's business location at the time of cancellation; or

(2)   Agency fails to return in good condition, within ten days, all materials, records, and supplies furnished to Agency by Nationwide during the course of this Agreement, together with any copies thereof; or

(3)   After cancellation of this Agreement, Agency, Agency's Principal, or its employees solicit or attempt to solicit existing policyholders at any time, or directly or indirectly induces, attempts to induce or assists anyone else in inducing or attempting to induce policyholders to lapse, cancel, or replace any insurance contract in force with Nationwide; furnish any other person or organization with the name of any policyholder of Nationwide so as to facilitate the solicitation by others of any policyholder for insurance or for any other purpose.

g.   The Agency Security Compensation is intended to be exclusive of the compensation and/or benefits awarded by any state statute or regulation.   If the Agency elects any benefits of any such statute or regulation, then the amount of such benefits so received shall be deducted from the benefits due Agency under paragraph 12.   If the exact amounts of any such statutory or regulatory benefits are known at the time of the cancellation of this Agreement, then this deduction shall be immediately made and the balance of such benefits under paragraph 12 shall commence as provided for under the provision of paragraph 12.   If the exact amount of such statutory or regulatory benefits are not known at the time of the cancellation of this Agreement, then the payment

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 44 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 18 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-4   Filed 12/04/2008   Page 9 of 12

of any benefits under paragraph 12 shall be deferred until such time as the amount of such statutory or regulatory benefits becomes known.

h.   Amendments and Termination.

Nationwide hopes and expects to continue the Agency Security Compensation Plan indefinitely, and every effort has been made to meet future conditions.   In order to protect the Agency and Nationwide against unforeseen conditions, however, the right to amend or terminate this plan is necessarily reserved by Nationwide.   Nationwide may terminate this plan by notification, at least sixty (60) days prior to such termination, in writing. No change in the Plan or termination, however, can alter or modify rights or benefits received or credited prior to such change or modification.

13.   Pricing, Products, Rules and Regulations.   The insurance business being subject to changing laws, regulations and conditions, it is understood and agreed that each Company will prescribe rules, regulations, prices and terms under which it will insure risks, and each Company retains the right to change, alter or amend such rules, regulations, prices and terms, including the right to limit, restrict, or discontinue entirely the acceptance of writing any policies, coverages, lines or kinds of insurance, at any time it deems advisable to do so, and without notice to or consent of the agent, and any such change, alteration, amendment or limitations shall become effective on the date specified by the Company.

In order to maximize productivity and lower operating expenses to the benefit of the customer, agent and Companies, the Companies are investing in a computerized transaction and record-keeping system with our agency force.   Agents Office Automation (AOA) is designed to assist the agent and ultimately reduce expenses.   During the transitional period, the Company will utilize and accept transmittal of both hard copy and electronic transactions.   This dual system will not continue indefinitely.   On the date that total policies in force of agents using the AOA system represent 70% of the Company's personal lines policies in force, the Company will notify you that the dual system (hard copy and electronic transactions) will continue to operate for only one year after that date.   Six months after notification, the Company reserves the right to require all transactions to be through the AOA system.

14.   Agency Number.   For the benefit of the Companies and the Agency, a number is assigned to each Agency to facilitate more efficient use of the Companies' computer system.   This number is the property of the Companies and may be reassigned for identification within that system. The Agency name will be printed for the Agency's benefit on billings and materials received by our policyholders.   If this Agreement is canceled, the Agency name will be removed as soon as possible, but the Agency acknowledges that occasional error may cause it to continue to be printed.

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 45 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 19 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-4   Filed 12/04/2008   Page 10 of 12

15. **Extent of Authority**. Agency, through its employees, will obligate Nationwide only to the extent authorized by the rules and regulations set forth by Nationwide from time to time, or as may be authorized in writing by an officer of Nationwide.

16. **Authorization to Direct Bill**. The Agency and the Companies agree that it is to their mutual benefit for the Companies to bill the policyholders directly. The Agency hereby gives the Companies permission to use its name on those billings and for use of its name for a reasonable period following the cancellation of this Agreement.

17. **Amendments or Modifications**. Except as otherwise provided herein, this Agreement may be changed, altered, or modified only in writing signed by Agency and an officer of Nationwide.

18. **Assignment of Agreement**. No assignment of Agency's rights, responsibilities, or any sums due Agency under this Agreement shall be made without prior written consent signed by an officer of Nationwide.

19. **Agreement Defined, Prior Agreements Superseded**. Whenever used in this Agreement, the term "Agreement" shall mean any contract in writing captioned "Standard Agent's Agreement," "Master Agent's Agreement," or "Corporate Agency Agreement," between Agency and Nationwide executing this Agreement. The execution and delivery of this Agreement shall supersede and take the place of any prior Agreement, provided that the execution and delivery of this Agreement shall not affect Agency's, principal's, or licensed employees, obligation to pay any money due Nationwide from the principal or Agency under the provisions of any other Agreement, written or oral, nor shall the execution of this Agreement nullify any negotiated compensation agreement, differing from the Schedules of Compensation attached to former Agreements, entered into between the Agency and the Companies on cases written prior to the execution of this Agreement.

20. **Severability**. If any clause or part of this Agreement shall be held invalid for any reason, then such invalidity shall not affect any other part of this Agreement and the parts thereof not invalid shall remain in full force and effect.

21. **Legal Action Under This Agreement**. It is agreed that no action, suit, proceeding at law or in equity shall be brought under by this contract unless it is commenced and process is served within three years after the cause of action for which suit is brought. If the limitations set forth in this paragraph are prohibited by the statutes of the state in which this Agreement is issued, then these limitations shall be deemed amended to agree with the minimum period of limitation permitted by such statutes.

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 46 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 20 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-4   Filed 12/04/2008   Page 11 of 12

## GUARANTY

FOR VALUE RECEIVED, and to induce the above Insurance Companies to enter into the foregoing Agency Agreement with Diane Tamariz & Associates, PA, ("Agency"), the undersigned, individually, hereby guarantees the performance by Agency of all the terms and conditions contained in said Agency Agreement to be performed, kept and observed by said Agency, including but not limited to the unconditional payment of all amounts and debts due from Agency, and hereby waives demand, protest, and notice of non-payment of any and all said indebtedness, liabilities, and obligations. The undersigned principal further covenants that over 50% of the voting shares of Agency are and will remain beneficially owned by the Principal.

Further, as principal I understand that I am included within Paragraph 12e and f of this and all former agreements as Principal and in my individual capacity. Specifically, any compensation due as individual is merged into the conditions as principal.

Furthermore, Principal warrants that this is the only Agency Agreement with the Companies for licensed employees of the Corporate Agency except for Associate Agent agreements of the Agency.

Date: ___6.21.04___          _β Diane Tamariz Wallace_
                                    (Principal)

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 47 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 21 of 23

Case 2:08-cv-01148-EAS-MRA     Document 11-4     Filed 12/04/2008     Page 12 of 12

## SIGNATURE PAGE

If the agent earns commissions for business written in a state other than the agent's resident state, and the non-resident state does not allow the payment of commissions to a corporation, those commissions will be paid to, and reported as income to, the principal agent as an individual under the principal's tax identification number.  Such commission will not be reported as corporate income.

The effective date of this agreement is July 1, 2004, or, the first of the month following receipt of a copy of this completed signature page in Centralized Licensing, Nationwide Insurance, Columbus, Ohio.

IN WITNESS WHEREOF, Agency and Nationwide have caused their corporate names to be affixed by their duly authorized representative to duplicate copies hereof.

NATIONWIDE MUTUAL INSURANCE COMPANY
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
NATIONWIDE LIFE INSURANCE COMPANY
NATIONWIDE GENERAL INSURANCE COMPANY
NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY
NATIONWIDE LIFE AND ANNUITY INSURANCE COMPANY
COLONIAL INSURANCE COMPANY OF WISCONSIN


By _____      6-24-04
   (For) the Companies                 (DATE)


By _____      6.21.04
   President of the Agency            (DATE)


Corporate Name:

DIANE TAMARIZ + ASSOCIATES PA


Tax-Payer Identification Number:

████████ 2014

Revised 2/17/03
DANOR/CORP AGY AGMT/MAIN CORP AGY AGMT/ALL STATES EXCEPT TX/13/f

All States Except
TX

Case 1:09-cv-00667-JFM   Document 78-2   Filed 01/21/16   Page 48 of 49
Case 10-21874   Claim 21-1 Part 3   Filed 10/06/10   Page 22 of 23

Case 2:08-cv-01148-EAS-MRA   Document 11-5   Filed 12/04/2008   Page 1 of 2

08/29/2005  10:08   41054   3          MORAN INSURANCE          PAGE  02

# CORPORATE ASSOCIATE AGENT AGREEMENT

This agreement is between the Nationwide Insurance Companies (hereinafter referred to as "Nationwide") and *DIANE TAMARIZ & ASSOCIATES, PA* (hereinafter referred to as "Agent") and *MORAN INSURANCE SERVICES, INC* as a Corporate Associate Agent (hereinafter referred to as Corporate Associate Agent), and is effective on August 26, 2005. Corporate Associate Agent is a Corporation with B Diane Tamariz-Wallace as President and majority shareholder.

Agent is an independent contractor agent of the Nationwide Insurance Companies and has an active Agent's Agreement setting forth the specific terms of the relationship. Nothing herein should be considered in conflict with the Agent's Agreement and if such conflict occurs, the Agent's Agreement prevails. Agent and Corporate Associate Agent have reached agreement whereby Corporate Associate Agent will work solely for Agent and Corporate Associate Agent is subject to *all* of the terms of Agent's Agreement with Nationwide including, but not limited to, exclusive representation, brokerage, and the no-competition and no-solicitation provisions.   Only DIANE TAMARIZ & ASSOCIATES, PA and MORAN INSURANCE SERVICES, Inc (represented only by B Diane Tamariz-Wallace President and majority shareholder), may represent and sign for Corporate Associate Agent with respect to this agreement. Any employee or representative of Corporate Associate Agent who may represent or sign for Corporate Associate Agent with respect to any transactions to which Nationwide is a party must also be appointed by Nationwide as an associate agent and enter into a separate associate agent agreement between Nationwide, Agent, and the associate agent. *No compensation will be paid to Corporate Associate Agent by Nationwide* and all business will be credited to Agent. Agent is solely responsible for compensating Corporate Associate Agent.

In consideration for Nationwide agreeing to appoint Corporate Associate Agent to lawfully represent Nationwide for the following lines of insurance:

- ☑ Personal Lines Property and Casualty
- ☑ Life and Health
- ☑ Variable Annuity
- ☑ Commercial Lines Property and Casualty
- ☑ Nationwide General
- ☑ Variable Life

Agent and Corporate Associate Agent further agree to the following:

1. Nationwide has the right to cancel the appointment of Corporate Associate Agent at any time, with or without cause. Furthermore, the cancellation of Agent will automatically cause Corporate Associate Agent 's appointment to be cancelled. Nationwide has the right to cancel Agent due to the acts or omissions, with our without cause, of Corporate Associate Agent.

2. B Diane Tamariz-Wallace will remain both President and majority shareholder of MORAN INSURANCE SERVICES, Inc   if his status as President or majority shareholder of MORAN INSURANCE SERVICES, Inc, ceases, this agreement will terminate.

3. The training, expenses, and activities of Corporate Associate Agent are Agent's responsibility and not Nationwide's.

4. Agent is responsible for obtaining Errors and Omissions coverage for all employees and representatives of Corporate Associate Agent who represent Nationwide in any transactions.

5. Agent certifies that Corporate Associate Agent meets the statutory standards set forth for the requested appointment. Agent understands that Nationwide will rely on Agent's certification and Agent agrees to hold Nationwide harmless if there are liabilities which result from the certification, including the cost of defense and/or judgment arising out of any claim, litigation, or other action related to this appointment or the arrangement between Agent and Corporate Associate Agent.

6. Agent acknowledges the Associate Agent Policy as outlined in the Agency Administrative Handbook as exists from time to time and agrees that such policy is applicable to Agent and Corporate Associate Agent.

7. Agent is required to have a two-party agreement with the Corporate Associate Agent, which enables Agent to protect and enforce his rights outlined in the Agent's Agreement. Agent must be willing to enforce these rights with assistance from Nationwide.

- 1 -

## CORPORATE ASSOCIATE AGENT AGREEMENT

I have read the terms of this Agreement and these terms are contractual and not a mere recital. Authority to represent Nationwide for lines of insurance not checked in this Agreement may be secured by Agent's written request and subsequent written approval by the Sales Manager or other Nationwide Company Representative.

Aug 26 2005
Date

B Diane Tamariz-Wallace
DIANE TAMARIZ & ASSOCIATES, PA

Aug 26 2005
Date

B Diane Tamariz-Wallace
MORAN INSURANCE SERVICES, INC

On behalf of the Nationwide Companies identified herein, I agree to authorize the appointment of Corporate Associate Agent under the conditions and representations expressed.

NATIONWIDE MUTUAL INSURANCE COMPANY
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
NATIONWIDE LIFE INSURANCE COMPANY
NATIONWIDE GENERAL INSURANCE COMPANY
NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY
NATIONWIDE LIFE AND ANNUITY INSURANCE COMPANY
NATIONWIDE ASSURANCE COMPANY
NATIONWIDE INSURANCE COMPANY OF FLORIDA
COLONIAL COUNTY MUTUAL INSURANCE COMPANY
NATIONWIDE LLOYDS

8-29-05
Date

Sales Manager

-2-